920 A.2d 790

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Miguel RIOS, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 11, 2003.

Decided April 18, 2007.

584

588

594

596

Christina Allison Swarns, Esq., Angelica Matos, Esq., Philadelphia, for Miguel Rios.

Amy Zapp, Esq. Hugh J. Burns, Jr., Esq., Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Chief Justice CAPPY.

Appellant Miguel Rios appeals from the Order of the Court of Common Pleas of Philadelphia County (PCRA court) denying and dismissing his Petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–46. For the reasons explained at length herein, we hold that the PCRA court properly denied Appellant collateral relief, and therefore affirm.

On August 27, 1992 Appellant rang the doorbell of a residence where Jose Ortiz lived with his girlfriend, Carmen Colon, their two-year old son, and Carmen's sister, Irma Colon. When Irma Colon answered the door, she found Appellant dressed in a Philadelphia Gas Works uniform and representing that he was there to check the gas meter. After being let into the house, Appellant took hold of Irma Colon's neck and demanded that she give him the key to admit an accomplice into the house. Appellant and his accomplice proceeded to the bedroom in which Mr. Ortiz, Carmen Colon and their son were sleeping. He threatened to kill Irma Colon unless Ortiz let him into the bedroom. Appellant then

demanded money, jewelry, and drugs. Appellant forced Ortiz and Irma Colon to the floor, threatening to kill them if he did not find what he was seeking. The accomplice proceeded to ransack the house. Appellant beat Irma Colon in the head with his gun until she lost consciousness. Carmen Colon watched as Appellant and his accomplice beat Ortiz and bound his hands and feet. Her eyes were closed when she heard a gunshot. When she opened them, she saw Ortiz laying on the floor with a gunshot wound to the head.

Thereafter, both Irma and Carmen Colon were able to identify Appellant from a police photo array. After a warrant was issued, Appellant was apprehended while hiding in the closet of a home in Lancaster and arrested.

On June 17, 1993 a jury convicted Appellant of first-degree murder, robbery, unlawful restraint, aggravated assault, burglary, criminal conspiracy, and possession of an instrument of a crime. At the penalty phase, the jury found three aggravating circumstances: the murder occurred in the perpetration of a felony (burglary); defendant knowingly created a grave risk of death to another; and defendant had a significant history of violent crime felony convictions. 42 Pa.C.S. § 9711(d)(6), (7), (9). The jury found two mitigating circumstances: defendant was under the influence of extreme mental or emotional disturbance at the time of the crime; and the defendant's circumstances fit within the catch-all mitigating circumstance. 42 Pa.C.S. § 9711(e)(2), (8). As the mitigating circumstances were out weighed by the aggravating circumstances, the jury sentenced Appellant to death for the murder of Jose Ortiz. After post-trial motions, the trial court formally imposed the death sentence. Appellant was appointed new counsel for purposes of direct appeal.

On appeal, this Court affirmed the judgments of sentence. *See Commonwealth v. Rios,* 546 Pa. 271, 684 A.2d 1025 (1996). Appellant filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on May 19, 1997.

On June 27, 1997 Appellant filed a *pro se* petition for relief under the PCRA. Appellant filed an amendment to this petition with the assistance of counsel on December 19, 1997 and a supplement on August 3, 1998. The Commonwealth filed a motion to dismiss the Petition. The PCRA court denied the motion in part and dismissed in part. The court granted an evidentiary hearing limited to the issue of trial counsel's effectiveness at the penalty phase. After conducting several such hearings, the PCRA court denied the PCRA petition *in toto*. This appeal followed.

On appeal from the denial of PCRA relief, our standard of review is whether the ruling of the PCRA court is supported by the record and free of legal error. *Commonwealth v. Breakiron*, 566 Pa. 323, 781 A.2d 94 (2001). In order to qualify for PCRA relief, the appellant must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the following statutorily enumerated factors:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would

have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S. § 9543(a)(2).

Appellant must further demonstrate that the issues raised in his petition have not been previously litigated or waived, and that "the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel." 42 Pa.C.S. § 9543(a)(3), (4). An issue has been litigated pursuant to the PCRA if the highest appellate court in which the petitioner was entitled to review as a matter of right has ruled on the merits of the issue. *Commonwealth v. Crawley*, 541 Pa. 408, 663 A.2d 676, 678 (1995). Further, a claim under the PCRA will be waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post conviction proceeding." 42 Pa.C.S. § 9544(b).

In this appeal, Appellant has raised many allegations of ineffective assistance of counsel throughout the guilt and penalty phases of his trial. In Pennsylvania, we begin with the presumption that counsel is effective. *Commonwealth v. Rollins*, 558 Pa. 532, 738 A.2d 435, 441 (1999). In order to overcome this presumption, an appellant must establish three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his action; and (3) the petitioner was prejudiced by the ineffectiveness. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987). In determining whether counsel's actions were reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued: rather, we must examine whether counsel's decisions had any reasonable basis. *Rollins*, 738 A.2d at 441. Further, in order to establish prejudice, it must be demonstrated that "but for the act or omission in question, the outcome of the proceedings would

600

have been different." *Id.* If a defendant fails to set forth evidence sufficient to meet any of the three elements, his ineffectiveness claim will be denied. *Pierce,* 786 A.2d at 221–22. Further, we have held that "[i]f it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 701 (1998). Finally, in a PCRA proceeding, a defendant must establish that the ineffectiveness of counsel was the sort which "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Pierce,* 786 A.2d at 221–22; *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326, 333 (1999).

■ Under *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014 (2003), the only claim of ineffectiveness that Appellant can assert in PCRA proceedings is that of appellate counsel's ineffectiveness for failing to claim on direct appeal that trial counsel was ineffective.[1] *McGill,* 832 A.2d at 1021. The failure to allege appellate counsel ineffectiveness will waive the underlying ineffectiveness claim against trial counsel. Appellant must, then, plead, present, and prove the ineffectiveness of appellate counsel pursuant to the general *Pierce* test of ineffectiveness; i.e. that the underlying claim of appellate counsel ineffectiveness has arguable merit, appellate counsel had no reasonable basis for his action, and appellate counsel's ineffectiveness prejudiced Appellant. *See Pierce,* 786 A.2d at 213. In order to establish the first prong, arguable merit, as to appellate counsel's alleged ineffectiveness, Appellant must

1. In *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726, 738 (2002), this Court held that claims of trial counsel's ineffectiveness will no longer be required to be raised on direct appeal when new counsel has been appointed for appeal. Because, however, Appellant obtained new counsel on direct appeal and Appellant's direct appeal concluded before our decision in *Grant,* it will be necessary to analyze his allegations under the framework for layering ineffectiveness claims aptly outlined in *McGill.* For claims arising after *Grant* the *McGill* analysis will be unnecessary.

demonstrate the underlying claim that trial counsel was ineffective. *McGill*, 832 A.2d at 1022. Only if Appellant can demonstrate that trial counsel was ineffective does the Court need to inquire into the other two prongs of appellate counsel's ineffectiveness. *Id.* at 1023.

In *McGill*, we recognized that due to the confusion surrounding the presentation of layered claims of ineffectiveness some appellants had failed to layer their ineffectiveness claims or had done so improperly, such as by a boilerplate allegation of ineffectiveness by all prior counsel. In such cases we held that "a remand to the PCRA court may be appropriate for cases currently pending in the appellate courts where the petitioner has failed to preserve, by pleading and/or presenting, a layered ineffectiveness claim in a manner sufficient to warrant merits review." *Id.* at 1024. In *Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651, 657 (2003), however, we explained that a remand "is not automatically appropriate." We stated:

> Nevertheless, there is simply no need to remand a PCRA petition when the petitioner has not carried his *Pierce* burden in relation to the underlying claim of trial counsel's ineffectiveness, since even if the petitioner were able to craft a perfectly layered argument in support of his claim, the petitioner's claim would not entitle him to relief. In these circumstances, a petitioner would never be able to establish the arguable merit prong necessary for proving appellate counsel ineffective.

*Rush*, 838 A.2d at 657–58. Thus, we will not remand a case to the PCRA court for the opportunity to properly plead and prove a claim of appellate counsel ineffectiveness when Appellant cannot establish that trial counsel was ineffective. To do so would merely allow Appellant to engage in an exercise in futility as trial counsel ineffectiveness is necessary to establish the first prong of a properly layered claim of appellate counsel ineffectiveness.

Appellant has raised twenty-three issues and several sub-issues in this appeal, raising claims of error in both the guilt

and sentencing phases of his trial. We will address the issues *seriatim,* beginning with those regarding ineffectiveness of counsel at the guilt phase, followed by such claims for the penalty phase of trial. In doing so we will only consider the claims related to trial counsel's ineffectiveness as it is a necessary element of appellate counsel ineffectiveness. We will finally address Appellant's claims not premised upon ineffectiveness.

Appellant first asserts that trial counsel was ineffective for failing to object to the trial court's jury instructions on accomplice liability. He contends that the instructions improperly relieved the Commonwealth of its burden of proving every element of first degree murder beyond a reasonable doubt. Specifically, Appellant asserts that the trial court did not explain to the jury that in order for an accomplice to be convicted of first-degree murder, the Commonwealth must prove beyond a reasonable doubt that the accomplice himself had the specific intent that the victim be killed. Appellant contends that the instructions provided by the court failed to illustrate this principle and thus permitted the jury to find Appellant guilty of first-degree murder on the basis of the state of mind of the unapprehended accomplice.

The issue of trial counsel ineffectiveness has already been litigated as an ineffectiveness claim on direct appeal, wherein we rejected Appellant's contention that trial counsel was ineffective.[2] We held that "the trial court thoroughly explained the concept of specific intent to kill. The trial court also explained that an accomplice or co-conspirator can be liable if he shares the intent to commit the crime at issue, i.e. first degree murder. Consequently, there is no merit in Appellant's underlying claim of trial court error because the trial

---

**2.** In *Commonwealth v. Collins,* 585 Pa. 45, 888 A.2d 564 (2005), we held that the litigation on direct appeal of a substantive issue will not bar a subsequent PCRA claim premised in ineffectiveness of counsel based upon the previously litigated underlying issue. We recognized an exception, however, where the very claim of ineffectiveness was raised on direct appeal. *Collins,* 888 A.2d at 573 n. 11. In such instances, as the *very issue* of ineffectiveness has been previously litigated, it will be barred pursuant to 42 Pa.C.S. § 9544.

court's charge was proper." *Commonwealth v. Miguel Rios,* 546 Pa. 271, 684 A.2d 1025, 1031 (1996). We concluded that because there was no merit to the underlying contention of error, trial counsel could not have been ineffective. *Id.*

 Because, however, this is a layered claim of ineffectiveness, we will not deem this issue to be barred by 42 Pa.C.S. § 9544 because on direct appeal the sole issue addressed was that of trial counsel's ineffectiveness, whereas here we must inquire into the discrete issue of appellate counsel's effectiveness. In *Collins,* we recognized that often, the claim for ineffectiveness will fail on the merit prong because of the reasons discussed on direct appeal. *Collins,* 888 A.2d at 573 n. 10. This is the case here. As we explained on direct appeal, the underlying contention of error in the jury instructions is completely without merit. As such, neither trial counsel nor appellate counsel were ineffective for failing to object or pursue the matter on appeal. As we have held, counsel cannot be deemed ineffective for failing to object to a proper jury charge. *Commonwealth v. Thompson,* 538 Pa. 297, 648 A.2d 315, 321 (1994).

 Appellant next contends that he was denied a fair trial because six or seven jurors saw him bound in handcuffs and flanked by sheriffs during a recess in the trial. Defense counsel moved for a mistrial or an immediate curative instruction. Further, Appellant charges that trial counsel was ineffective in failing to object to the trial court's refusal to give a curative instruction when six or seven jurors saw him bound in handcuffs.[3]

**3.** As explained in our opinion on the direct appeal, the trial court did, in fact, issue a curative instruction at the conclusion of trial. It stated:

> The mere fact that [Appellant] was arrested and accused of a crime and brought to trial is not evidence. The fact that he is sitting here represented by an attorney and may even be in custody is not evidence. That is the procedure that is followed in most cases. The evidence bearing on the charges is what was brought to you by way of witnesses and other physical evidence that was introduced.

Notes of Testimony 6/16/93 at 631–32. Thus, the trial court addressed the issue while not bringing potentially negative attention to the actual incident that may or may not have been witnessed by many of the jurors.

■ Like the prior issue, the claim of trial counsel's ineffectiveness as to the underlying issue of the trial court error has already been litigated on direct appeal. There, we wrote:

> The record indicates that during a recess in trial, counsel informed the trial court that Appellant told him that six or seven jurors had seen him walking in the hallway with the sheriff as he returned from the men's room wearing handcuffs. Trial counsel moved for a mistrial or, alternatively, for a curative instruction. The trial court explained that it wanted to wait to give the curative instruction because a contemporaneous instruction would do more harm than good by highlighting the incident for the jury. The trial court later instructed the jury that although the defendant had been arrested and was in custody, these facts could not be used as evidence of guilt.
>
> Under these circumstances, Appellant has failed to demonstrate that trial counsel was ineffective for acquiescing to the trial court's course of action. Initially, Appellant's underlying claim that some of the jurors viewed him briefly in handcuffs lacks support in the record. The only evidence of this episode is Appellant's uncorroborated statement to trial counsel that some of the jurors saw him in the hallway wearing handcuffs. Moreover, even if this brief viewing did occur, "[i]t is well settled law that a mere accidental observation of a defendant in handcuffs outside a courtroom by a juror does not, without more, require the granting of a mistrial, although a cautionary instruction by the trial court on the event will be appropriate." *Commonweath v. Evans,* 465 Pa. 12, 348 A.2d 92, 94 (1975).

*Commonwealth v. Rios,* 684 A.2d at 1032. As on direct appeal, we rely on the established precedent of this Court holding that the mere accidental observation of the defendant in handcuffs does not require a mistrial. *Evans,* 348 A.2d at 94. Therefore, Appellant cannot meet the arguable merit prong of his claim for appellate counsel ineffectiveness, since the claim for trial counsel ineffectiveness fails.

■ Appellant also contends that trial counsel was ineffective for failing to present exculpatory evidence in violation of

the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and corresponding provisions of the Pennsylvania Constitution because he is actually innocent, but trial counsel ineffectively failed to present exculpatory alibi evidence. Specifically, Appellant states that he was in Lancaster on the day and time the murder was committed. He claims that he had alibi witnesses to prove his case, but that trial counsel, although aware of the evidence, decided not to present it to the jury. The PCRA Court dismissed this claim, stating that the record shows that Appellant knowingly assented to the decision not to present alibi evidence. We agree with the PCRA Court that the record illustrates that Appellant knowingly participated in, if not originated, the decision not to present the alibi witnesses, and that, therefore, the prong of trial counsel's ineffectiveness cannot be established. N.T. 6/15/93, at 577.

At the close of the defense's case, the trial judge conducted a colloquy as to the choice not to call the alleged alibi witnesses. The court explained to Appellant that he had a right to call the alibi witnesses in his defense. The court further explained that it would provide a jury instruction telling the jury to consider the alibi testimony in determining whether he could actually have committed the crime. Appellant confirmed on the record that he understood that alibi witnesses would not be presented and that he understood the implications of this omission. The colloquy, in relevant part, stated:

THE COURT: However, your attorney did send notice of alibi witnesses orally as a defense to the district attorney's office.

DEFENDANT: Yes.

THE COURT: Now, I am advised that you do not want to proceed with such witnesses. Is that correct?

DEFENDANT: No. I don't. I don't want to.

THE COURT: You don't want to?

DEFENDANT: No.

THE COURT: That decision is your decision after talking to your attorney?

DEFENDANT: Correct.

N.T. 6/15/93, at 577. Thus, the record is clear that Appellant was presented with the option of calling alibi witnesses, and instructed as to the implications of calling such witnesses, but decided nevertheless not to do so.

This Court has held that "a defendant who makes a knowing, voluntary, and intelligent decision concerning trial strategy will not later be heard to complain that trial counsel was ineffective on the basis of that decision." *Commonwealth v. Paddy*, 569 Pa. 47, 800 A.2d 294, 316 (2002) (citing *Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 93 (1998)). To do otherwise, the Court held, "would allow a defendant to build into his case a ready-made ineffectiveness claim to be raised in the event of an adverse verdict." *Id.* In *Paddy*, the defendant complained of trial counsel's ineffectiveness for failing to call alibi witnesses. We held that "this ineffectiveness claim fails for the fundamental reason that Paddy agreed at trial to counsel's decision not to call the witnesses in question." *Id.* at 315. As in this case, the trial court engaged Paddy in a colloquy as to the decision not to call the alibi witnesses. He replied that trial counsel had explained her decision not to call the witnesses and that he agreed. He further stated that he understood that he had a right to call the witnesses. We dismissed his claim, stating:

As Paddy expressed the view that the decision not to call alibi witnesses was his as well as trial counsel's, and his decision has not been shown to have been unknowingly, involuntarily, or unintelligently made, this allegation of ineffectiveness lacks arguable merit.

*Id.* at 316. Likewise, in this case, the trial court conducted a colloquy to determine whether Appellant knew of his right to call the alibi witnesses and waived this right knowingly. There is no indication from the record that there was anything other than a voluntary decision on the part of the Appellant, in consultation with counsel, to waive his right to call the alibi witnesses. In fact, while the defendant in *Paddy* merely

agreed with his attorney's strategy in not introducing alibi witnesses, the record here shows that it was actually Appellant's decision to refrain from presenting an alibi defense. Consistent with the well-reasoned policy enunciated by this Court, he may not now claim ineffectiveness.

■ Appellant contends that trial counsel was ineffective in not requesting the trial court to provide the jury with a cautionary instruction regarding the identification testimony of Irma and Carmen Colon. He argues that Irma Colon had but a limited opportunity to identify the Appellant, as she was only able to catch quick glances at several points during the criminal episode. Likewise, Appellant states that Carmen Colon had only a limited view of him, as she was awaken from sleep and had her face covered for much of the incident in the bedroom. As such, Appellant argues that pursuant to our Court's holding in *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954), he was entitled to an instruction warning the jury about the unreliability of the testimony in light of the limited opportunity of the witnesses to observe him. He alleges that trial counsel was ineffective in failing to object to the lack of such instruction.

In *Kloiber* this Court held:

[W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

*Kloiber*, 106 A.2d at 826–27. Thus, *Kloiber* entitles a defendant to a cautionary instruction when either (1) the witness was in a position that prevented a clear observation of the actor; (2) he is equivocal in his identification of the assailant; or (3) he has failed to identify the defendant on one or more prior occasions. The existence of one of these factors will cast such doubt upon the accuracy of the identification so as to require a cautionary instruction.

In this case, none of the *Kloiber* factors are present. Both witnesses had a sufficient opportunity to view Appellant during the commission of the crime. Irma Colon saw him when she looked out the window after he had rung the doorbell. She further viewed him when she went outside to admit him to the house. While in the house, he spoke directly to her, asking first where the basement was located and further when he forced him to give her jewelry to him. Carmen Colon also had ample opportunity to view Appellant. She testified that she stared at him when he came into the bedroom and continued to "peek" at him as she was lying on the bed. Additionally, both sisters were able to pick Appellant out of a photo array and have never questioned their identification of him.

As none of the *Kloiber* factors have been implicated, there was no need for the trial court to provide a cautionary instruction. As such, counsel was not ineffective in not requesting such an instruction.

On a related issue, Appellant argues that trial counsel was ineffective in failing to cross-examine Irma Colon regarding her prior statements about her opportunity to observe his identity. Appellant again argues that Irma Colon did not have ample opportunity to observe him and that this was reflected in her testimony at the preliminary hearing, which was allegedly contradicted at trial.

Appellant states that at the preliminary hearing, Irma Colon testified that it took fifteen seconds for the perpetrator to enter the house and throw her to the couch. N.T. 10/14/92 at 38. At trial, however, Appellant points out that that Irma Colon testified to a sequence of intervals which add up to more than fifteen seconds. N.T. 6/14/93 at 398. Further, Appellant alleges inconsistency in Irma Colon's pre-trial testimony, in which she stated that she could not see the perpetrator's face while she was on the couch, or while she was taken from the first floor to the second. N.T. 10/14/92 at 26, 38, 39, 40, 47. At trial, she testified that she was able to look at him while she was on the couch. Indeed, she testified that he stated

that she was "looking at me too much." N.T. 6/14/93 at 401. Finally, Appellant points out that Irma Colon testified at trial that she was able to see Appellant's face while removing her jewelry and that she was able to see dark brown hair coming out from his hat, but she never stated such at the preliminary hearing. Appellant contends that counsel was ineffective for not impeaching Irma Colon's identification testimony with her prior statements.

The Commonwealth argues that there was no real contradiction as to the length of time Irma Colon was able to view Appellant. She did not, as at the preliminary hearing, give a precise time frame in which she was able to see him, but did testify that she was able to see him sufficient that she could recognize him if she saw him again. N.T. 6/14/98, at 398. Further, there was no inconsistency as to Irma Colon's testimony regarding whether she could see Appellant's face while she was struggling with him on the couch. Both pre-trial and at trial she testified that she could not, in fact, see his face during the struggle. The Commonwealth concedes that Irma Colon's testimony was inconsistent in one instance. She stated at the preliminary hearing that she could not see Appellant's face after she had led him into the bedroom. At trial, however, she testified that she saw his face when he made her give him her jewelry. The Commonwealth points out, however, that Appellant has not put forth any evidence that counsel did not decide not to cross examine Ms. Colon on this single point out of some strategic consideration or that Appellant had established prejudice in any way.

The law presumes that trial counsel was effective. *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981). In order to establish a claim of ineffectiveness of counsel, the burden is on the criminal defendant to prove that (1) the underlying claim is of arguable merit; (2) counsel's performance had no reasonable basis; and (3) counsel's ineffectiveness worked to his prejudice. *Commonwealth v. Baez*, 554 Pa. 66, 720 A.2d 711, 733 (1998) (citing *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 229 (1995)). Trial counsel's assistance is deemed constitutionally effective if the particular course

chosen by counsel was reasonably designed to effectuate his client's interests. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987). Further, as prejudice is an essential element of an ineffectiveness claim, an attorney will not be found ineffective for failing to impeach a witness on minor inconsistencies between a pre-trial statement and trial testimony. *Baez*, 720 A.2d at 734 (citing *Commonwealth v. Moore*, 534 Pa. 527, 633 A.2d 1119 (1993)).

An examination of the record reveals that there is no real contradiction between Irma Colon's pre-trial statement and trial testimony regarding the length of time she was able to see Appellant. She stated that she saw him for sufficient time to be able to identify him if she would see him again. The only inconsistency on the record is that Irma Colon testified at trial that she was able to see Appellant's face while in the bedroom, whereas in her pre-trial statement she said that she was unable to see his face once in the bedroom.

The one minor inconsistency in Irma Colon's testimony does not establish Appellant's claim for ineffectiveness. *See Baez*, supra, and *Moore*, supra. Appellant has the burden of proving that counsel's failure to impeach Irma Colon on this point worked to his prejudice. He has not done so. As there was but one minor inconsistency in Irma Colon's testimony, and she testified to ample other opportunities to view Appellant, his burden of proving prejudice from trial counsel's failure to cross examine Irma Colon on the inconsistency has not been met. As such, the presumption that counsel was effective stands. *See Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998).

 Appellant claims that counsel was ineffective for failing to object to the trial court's erroneous instruction on reasonable doubt. The court explained to the jury that "a reasonable doubt is a doubt that would restrain a reasonably careful and sensible person from acting upon a matter of importance in his own affairs." N.T. 6/16/93 at 634. Appellant points out that the standard Pennsylvania jury instruction for reasonable doubt states, "A reasonable doubt is a doubt

that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his own affairs." Appellant contends that the use of the word "restrain" rather than "hesitate" sets the bar for reasonable doubt higher and infringed upon the presumption of innocence.

This Court has previously addressed this very issue. In *Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d 890 (1999), the appellant put forth the same argument, that the trial court erred in using "restrain" rather than "hesitate" in its instruction on reasonable doubt. This court rejected the claim. We wrote:

> This hyper-technical semantical claim is rejected on a plethora of bases. First, although we have historically considered the language contained in these standard instructions to be an aid in our review, we have not placed our imprimatur upon them. See generally, *Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575, 583 (1991). Second, even if we had adopted this specific instruction, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instruction, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61, 70 (1983). In this matter the distinction between "hesitate" and "restrain before acting" is *de minimis* and clearly such a subtle variation in phrasing would not be an abuse of the trial court's discretion. Finally, this court has actually approved of a reasonable doubt instruction which tells the jury that it is "the kind of doubt that would restrain a reasonable man (or woman) from acting. . . ." *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258, 262 (1974).

*Porter*, 728 A.2d at 899–90; *see also Commonwealth v. Hawkins*, 567 Pa. 310, 787 A.2d 292, 301–02 (2001). Thus, it is clear that the jury instruction regarding reasonable doubt was not erroneous. As such, Appellant's claim of ineffectiveness must necessarily fail.

612

■■■

■ Appellant contends that trial counsel was ineffective for failing to object to alleged victim impact testimony that the Commonwealth purportedly introduced in both the guilt and penalty phases of trial. This contention fails because no such testimony was presented.

Appellant characterizes the following testimony of Carmen Colon as victim impact testimony: that her son was two years old at the time of the murder; that she had been romantically involved with the victim for four years; that she was three months pregnant at the time of the shooting; and that she was wearing only a bra and panties at the time of the shooting. Appellant contends that such facts have no relevance other than to inflame the jury and distract it from its essential fact-finding role.

Victim impact testimony is defined by 42 Pa.C.S. § 9711(a)(2) as "evidence concerning the victim and the impact that that death of the victim has had on the family of the victim...." *See also Commonwealth v. McNeil,* 545 Pa. 42, 679 A.2d 1253, 1259 (1996). At the time of Appellant's trial, victim impact testimony was completely barred from criminal proceedings. Thus, Ms. Colon's testimony will be deemed improper victim impact testimony to the extent that it is evidence concerning the victim and the impact of his death on the victim's family and is not otherwise relevant to the proceedings. Her statements do not meet this definition. Rather, they were merely facts that painted a full picture of the incident at issue to aid in the jury's understanding of the crime. The fact that Ms. Colon was romantically involved with the decedent establishes a reason for her presence in the room at the time of the incident. Her son's age is relevant to explain his lack of participation as a witness. Her pregnancy shows a reason for remaining on the bed rather than actively resisting. That she was merely wearing a bra and panties explain why she requested time to put on clothes before admitting Appellant into the bedroom. While the jury could potentially piece these facts together to find some sympathy for Carmen Colon and her son due to victim's death, this was not the purpose of their admission. Further, a criminal

defendant does not have the right to have all evidence presented against him at trial sanitized of anything that could cause jurors to sympathize with the victim or his family.

Because the testimony at issue was not victim impact testimony, counsel was not ineffective for failing to object thereto. As such, Appellant's claim fails.

Appellant next alleges ineffectiveness of counsel for failing to object to several of the prosecutor's statements from the guilt phase closing arguments which he deems to be prosecutorial misconduct.

First, Appellant contends that the prosecutor "invited the jury to put itself in the witnesses' place, imagine their fear, and reach a verdict based on terror instead of an objective evaluation of the evidence." Appellant's Brief at 89. Appellant was referring to the prosecutor's description of the violent and chaotic nature of the crime. He did refer to the witness' fear, but not in order to influence the jury's decision. Rather, the prosecutor was merely attempting to explain how it was unlikely that the Colon sisters would not be able to remember the appearance of the man responsible for such actions and later to identify him. This was merely arguing from the evidence presented and did not invite the jury to reach a verdict based on terror. As such, this was not prosecutorial misconduct.

Appellant also claims that the prosecutor committed misconduct when he "asked jurors to base their decision on the purported fact that, absent a conviction, the lives of the witnesses would be jeopardized." Appellant's Brief at 89. He refers to statements of the prosecutor explaining that Carmen and Irma Colon would have to return to the neighborhood after the trial and that in such neighborhoods, witnesses are regarded as snitches. N.T. 6/15/93 at 614–15. The substantive question of whether this statement constituted prosecutorial misconduct was litigated on direct appeal. In our opinion therein, we rejected the claim of misconduct and explained that the prosecutor raised such issues only to illustrate that Irma and Carmen Colon would have no motivation to lie.

*Commonwealth v. Rios*, 684 A.2d at 1034. Further, we recognized that it is reasonable for a prosecutor to suggest that a witness has no motive to lie because he lives in the same neighborhood as the accused. *Id.* (citing *Commonwealth v. Brown*, 332 Pa.Super. 35, 480 A.2d 1171, 1177 (1984)). Appellant now brings an ineffectiveness claim arguing that trial counsel was ineffective in failing to object to the prosecutor's statement. While we must consider the separate issue of ineffectiveness pursuant to *Collins, supra,* we there recognized that the ineffectiveness claim may fail on the arguable merit prong for the reasons discussed on direct appeal of the underlying issue. *Collins,* 888 A.2d at 573. We do not now depart from our earlier assessment. As such, Appellant is unable to meet the arguable merit prong of a claim for ineffectiveness. The claim must, then, fail.

Likewise, Appellant next contends that trial counsel erred in not objecting to the prosecutor's arguments without a basis in the record. Specifically, the prosecutor described Appellant as "a very intelligent man" in describing the way in which he planned and executed the crime. N.T. 6/15/93 at 604. Trial counsel requested a mistrial, which the court denied. The underlying issue of whether this statement constituted misconduct was also previously litigated. On direct appeal, we held that the trial court did not err in denying a mistrial. *Rios,* 684 A.2d at 1033. We explained that a prosecutor may make "all reasonable inferences that find support in the evidence." *Id.* (citing *Commonwealth v. Sam,* 535 Pa. 350, 635 A.2d 603, 608 (1993)). We held that the evidence on record that Appellant "concocted a clever ruse to disguise the criminal purpose of his visit to the victim's home" supported the prosecutor's inference that Appellant is a very intelligent man. *Rios,* 684 A.2d at 1033. This claim of ineffectiveness must also fail. As previously explained, the prosecutor's comment was not improper in any way. As such, there is no arguable merit for a claim of ineffectiveness stemming therefrom. Further, Appellant cannot show that this one comment,

supported by the evidence, served to prejudice him in any way. As such, this ineffectiveness claim fails.[4]

Further, Appellant argues that the prosecutor committed misconduct in arguing that the decedent "was going to die no matter what he did." N.T. 6/15/93 at 617. He contends that this was improper because there was little evidence that the victim knew Appellant or that his death was inevitable. Appellant consequently contends that trial counsel was ineffective in failing to object to this statement.

The prosecutor's statement did not constitute misconduct. The prosecutor was merely making an argument based upon the evidence as to the nature of the crime. A prosecutor may urge the jury to draw any inference that is reasonably supported by the evidence. *See Commonwealth v. Sam*, 535 Pa. 350, 635 A.2d 603 (1993). Here, the evidence presented supports the inference that Appellant had conspired to kill, not merely rob, the victim. Therefore this line of argument was not prosecutorial misconduct.

Appellant also contends that the prosecutor committed misconduct by arguing that the lack of a shell casing at the scene evidences the calculated execution of a conspiracy to murder the decedent. He argues that there was no testimony indicating that Appellant had taken the shell casing. As such, he contends that the prosecutor was arguing facts not on the record and that this constitutes misconduct. Because counsel did not object to this argument, Appellant claims ineffectiveness.

There was no testimony establishing that Appellant or his accomplice actually removed the shell casing from the scene.

4. Appellant sets forth this claim as one that trial counsel was ineffective for failing to object to the arguments and that appellate counsel was ineffective for not properly raising the claim on appeal. As trial counsel did, in fact, object to the prosecutor's statement and request a mistrial this is best presented not as a layered claim of ineffectiveness, but rather a claim solely of appellate counsel's ineffectiveness in failing to further pursue the matter on appeal. This distinction is immaterial here, however, in that as explained *supra*, the conduct complained of was not improper, as such there is no arguable merit as to a claim of appellate counsel ineffectiveness.

Therefore, trial counsel could arguably have objected to the prosecutor's argument urging an inference from the lack of a shell casing. This is not, however, sufficient to establish a claim of ineffectiveness.

In this case, we must presume that counsel was effective unless proven otherwise. *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233, 235 (1981). Appellant's claim for ineffectiveness cannot succeed here as he has not demonstrated that he was prejudiced by counsel's failure to object to the prosecutor's argument. The few sentences urging the jury to infer a well-planned and executed crime from the absence of a shell casing were but a minor addition to the closing argument. This case focused primarily on identification, the well-hatched plan was not a significant part of the prosecution's theory. It was supported, however, by other evidence, such as the fact that Appellant and his accomplice procured Philadelphia Gas Works uniforms and gained entry into the house by claiming that they needed to check the gas meter. Appellant has not demonstrated how one minor fact of a relatively unimportant part of the prosecution's theory has caused him prejudice. Consequently, Appellant's ineffectiveness claim must fail. *See Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 701 (1998).

Next, Appellant contends that the prosecutor committed misconduct in stating "if I walk into this door and take out a gun and take one of you out and blow your brains out, you can bet. . . ." N.T. 6/15/93 at 603. At this point trial counsel objected and moved for a mistrial. The court sustained the objection, instructing the prosecutor not to involve the jury in the case, but denied the motion for a mistrial. *Id.* Appellant contends, however, that the prosecutor's statements violate this Court's holding in *Commonwealth v. Brown*, 489 Pa. 285, 414 A.2d 70, 76 (1980), that "[d]eliberate attempts to destroy the objectivity and impartiality of the finder of fact so as to cause the verdict to be a product of the emotion rather than reflective judgment will not be tolerated."

An examination of the record shows, however, that the prosecutor was not attempting to emotionally charge the

jury in hopes of obtaining a verdict based on such emotions. Rather, this argument was intended to illustrate merely that a witness to such a violent crime does not easily forget the identity of the perpetrator. After the trial court sustained the objection, the prosecutor tempered his argument by rephrasing the argument as follows: "If I take someone and shoot them [with] several people looking at me, and I run out, and they don't have my fingerprints, they are not going to say I didn't do it because the best evidence would be in front of their eyes ..." N.T. 6/15/95 at 603. This makes it clear that the prosecutor was not intending to inflame the jury, but merely to illustrate that the situation was such as to make it unlikely that a person would not be able to later identify the perpetrator. Further, prosecutorial comments will not require a mistrial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531, 536 (1986). The statements of which Appellant complains are not of this character. As such, his ineffectiveness claim fails.[5]

Finally, Appellant argues that counsel was ineffective in failing to object to the prosecutor's statements that, "You saw the photo spread. They picked out this man. Think of it. Would you have forgotten the man who comes in and does that? She has all the Puerto Ricans in all of North Philadelphia to pick from. She picks him. He is the one." N.T. 6/15/93 at 606. Appellant claims that this statement constitutes misconduct in that it incorrectly suggested that he was

---

**5.** As explained in fn. 3, above, Appellant also raises this claim as an allegation that trial counsel was ineffective for failing to object to the arguments and that appellate counsel was ineffective for properly raising the claim on appeal. As trial counsel did successfully object to the prosecutor's statement, this is best presented not as a layered claim of ineffectiveness, but rather a claim solely of appellate counsel's ineffectiveness in failing to further pursue the matter on appeal. Because, however, Appellant cannot demonstrate prejudice, this claim must fail. *See Carpenter, supra.*

identified from among hundreds or thousands of faces. He further alleges that the argument panders to racism in its mention of Puerto Ricans.

These arguments are without merit. The statements cannot be reasonably construed that Irma and Carmen Colon actually picked Appellant out from among every Puerto Rican in North Philadelphia. Rather, the statement was merely an example of oratorical flair. We have held that prosecutorial misconduct will not be found when comments were only oratorical flair. *Commonwealth v. Jones,* 571 Pa. 112, 811 A.2d 994, 1006 (2002). Here, as the prosecutor's comments cannot be reasonably interpreted as anything except oratorical flair, Appellant's claim fails. Likewise, there is no indication that the prosecutor was improperly injecting race into the proceedings in order to prejudice the jury. He was merely arguing that Appellant, a Puerto Rican male, was identified unequivocally by Irma and Carmen Colon as the perpetrator.

Appellant next asserts a series of claims for PCRA relief stemming from alleged errors at the penalty phase of his trial. First, Appellant claims that he is entitled to a new sentencing hearing due to trial counsel's ineffectiveness in investigating, developing, and presenting significant mitigating evidence. Specifically, Appellant argues that counsel failed to prepare and present evidence relating to two specific mitigating circumstances, his upbringing and family history and his mental health issues. We shall examine these in the order in which they were raised by Appellant.

An ineffectiveness claim based on counsel's failure to pursue all reasonably available avenues of developing mitigating evidence constitutes a mixed question of fact and law. As such, our standard of review is *de novo* and we will draw our own legal conclusions as to whether counsel's conduct fell below the constitutionally required standards. *Commonwealth v. Gorby,* 589 Pa. 364, 909 A.2d 775 (2006) (Cappy, C.J. joined by Newman, J. concurring).[6] As such, we owe no

---

**6.** Justice Castille authored a dissent, joined by Justice Eakin, which agreed with the standard set forth in the concurring opinion, constituting a majority of the Court. *Gorby,* 909 A.2d at 796 n. 2.

deference to the legal conclusion reached by the PCRA court. *Id.* Further, our scope of review is plenary. *Id.*

Appellant contends that trial counsel failed to present sufficient lay testimony as to his upbringing and family difficulties. Only the testimony of Jacinto Rios, Appellant's brother, was presented. Appellant states that several additional family members were available to testify, but that trial counsel failed to contact them.

Counsel was not ineffective in failing to present the additional family testimony as Appellant himself played a role in their exclusion. Appellant specifically instructed trial counsel not to present additional family witnesses. N.T. 4/4/2000 at 137. In fact, Appellant threatened trial counsel not to call such additional witnesses. *Id.* Appellant may not now allege that counsel was ineffective for following his directives.

In *Commonwealth v. Sam*, 535 Pa. 350, 635 A.2d 603 (1993), we held that the failure of defendant's counsel to present mitigating evidence did not constitute ineffectiveness when the defendant directed counsel not to present such evidence. While Sam had instructed his trial counsel not to present mitigating evidence at the penalty hearing, he later argued that no attorney has the discretion in a death penalty case to follow his client's instruction not to present such evidence. *Sam*, 635 A.2d at 611. He argued that an attorney has a duty in such a situation to defy his client and present mitigating evidence. *Id.* We rejected this argument. We held that "[a] criminal defendant has the right to decide whether mitigating evidence will be presented on his behalf." *Id.* at 611–12. As such, "counsel has no duty to introduce and argue evidence of mitigating circumstances where his client has specifically directed otherwise." *Id.* at 612 (citing *Commonwealth v. Tedford*, 523 Pa. 305, 567 A.2d 610 (1989) (trial court has no duty to compel the introduction of mitigating evidence at sentencing phase of trial when the defendant has specifically instructed counsel not to present such evidence)). Like the defendant in *Sam*, Appellant had specifically instructed his counsel not to present the testimony of additional family members. It was

his right not to present such evidence. Likewise, trial counsel had no duty to introduce such evidence contrary to the direction of his client. As such, Appellant's contention that trial counsel was ineffective must fail.

Appellant next argues that counsel was ineffective for failing to introduce two mental health reports and for failing to follow alleged leads contained in such reports regarding Appellant's mental health condition. Specifically, Appellant contends that the 1982 Saul Report and the 1984 Byrne Report, assessments prepared by mental health experts, illustrate that he has severe mental and emotional difficulties that should have been put before the jury as mitigating factors. This claim fails in that counsel obtained a stipulation from the Commonwealth that Appellant had been diagnosed as schizophrenic and was able to argue the mental health issue to the jury as a mitigating factor. Counsel specifically chose to limit his mental health evidence to the stipulation so as to put the diagnoses before the jury without delving into the negative statements in the mental health reports. N.T. 7/12/00 at 25–26, 28–30.

The PCRA court found that counsel was not ineffective in failing to present the mental health reports and evidence gleaned therefrom in that by relying upon the stipulation as to Appellant's mental health he was able to avoid cross examination and rebuttal by the Commonwealth. We agree.[7] The

7. Contrary to the dissent's assertions, we do not base our assessment of counsel's effectiveness on the O'Brien Report, which, as the dissent so aptly points out, was not authored until collateral review seven years after Appellant's trial. Rather, our assessment is firmly grounded in the testimony of trial counsel himself, who explained that there were both good things and bad things for the defense in Appellant's mental heath history, N.T. 7/12/2000 at 26, and that he relied on the stipulation of schizophrenia in order to avoid the introduction of a "considerable amount of psychiatric testimony that may [have] been harmful to the defendant's defense, mitigating circumstance." N.T. 4/3/2000 at 62. Counsel was aware, for example, that one of Appellant's prior mental health reports contained a diagnosis of a sociopathic personality. N.T. 7/12/2000 at 29. Relying on the stipulation was a strategic consideration calculated to provide evidence of a mental health disorder while preventing the Commonwealth from both arguing that Appellant was

diagnosis of schizophrenia contained in reports that were nine and eleven years old at the time of trial was by no means unassailable. As the PCRA court pointed out, the stipulation was, in fact, a coup for Appellant as the Commonwealth had reliable evidence that Appellant was not mentally ill, was fully capable of presenting the criminality of his acts, and was not under extreme mental or emotional stress at the time of the crime. Trial Court Opinion, 4/25/02 at 3. As such, counsel's decision to rely upon the stipulation rather than independently pursuing testimony as to Appellant's mental health cannot be deemed to be ineffectiveness.

In addition to the above outlined independent grounds to deny Appellant's ineffectiveness claims stemming from both counsel's alleged failure to call additional family witnesses and to present additional mental health issues, they must also fail under our holding in *Commonwealth v. Marshall*, 571 Pa. 289, 812 A.2d 539 (2002). In *Marshall*, Appellant argued that counsel was ineffective in failing to present testimony of family members in order to establish the catch-all mitigating factor of 42 Pa.C.S. § 9711(e)(8). Counsel did present such evidence via the testimony of Appellant's sister and maternal aunt. Based on their testimony, the jury found that the catch-all mitigator had been established. As such, we held that Appellant's ineffectiveness claim failed for a lack of prejudice. *Marshall*, 812 A.2d at 549. We held that an "appellant fails to establish prejudice in connection with an ineffectiveness claim based on counsel's failure to investigate and present *additional evidence* in support of a finding of a mitigating circumstance when that mitigating circumstance was already found to exist without the benefit of the additional evidence." *Id.* (emphasis added) (quoting *Commonwealth v. Scott*, 561 Pa. 617, 752 A.2d 871, 877 n. 7 (2000)).

free of mental health problems and from using adverse information from Appellant's mental health assessments in its favor.

Further, the dissent's suggestion that it is not a sound practice to rely upon an adverse party's expert witness to omit an investigation is well taken. However, as our analysis here does not encounter such a situation, there is no need to delve into its implications on the review of counsel's effectiveness.

622

Like in *Marshall*, Appellant's ineffectiveness claim in this case must also fail. The jury actually found that Appellant was under extreme mental or emotional disturbance at the time of the crime, 42 Pa.C.S. § 9711(e)(2)[8], and that his difficult upbringing satisfied the catch-all mitigator of 42 Pa. C.S. § 9711(e)(8). Notwithstanding any of the above enunciated factors, Appellant is unable as a matter of law to establish prejudice from counsel's failure to call additional witnesses and present additional mental health evidence. As such, he cannot succeed on his ineffectiveness claim.

■ Appellant asserts that he is entitled to relief from his death sentence because the prosecutor deliberately misled the sentencing jury regarding the criminal record of his brother, Jacinto Rios. The prosecution asked Jacinto Rios three questions regarding his criminal background:

Q. Sir you have never been arrested or convicted for or (sic) killing anybody ... have you?

A. No.

Q. You have never been in trouble?

A. No.

Q. You have never been convicted of breaking into somebody's house and taking their property, have you, sir?

A. No.

8. The dissent does not believe that it is clear that the jury actually found the § 9711(e)(2) mitigator, contending that the "mental illness" listed as a mitigating factor on the verdict slip, taken into context with other factors of the case, was more likely intended by the jury to establish the § 9711(e)(8) "catch all" mitigator. This is not supported by the totality of the record. While the jury did not specifically cite to § 9711(e)(2) in its finding of "mental illness," there is ample support that it is indeed what they intended. The verdict slip itself specifically lists § 9711(e)(2) as one of the two mitigating circumstances submitted to the jury. Counsel specifically told that jury that the defense was presenting two mitigating circumstances. N.T. 6/13/93 at 780. Counsel specifically instructed the court that he sought to establish that "The defendant was under extreme mental and emotional distress." *Id.* at 782. Indeed, the PCRA court explicitly stated that the jury found that § 9711(e)(2) was established. Trial Court Opinion, 4/25/02 at 2. The dissent marks the first time in the entire proceedings of this case, direct and collateral, where it was even questioned whether § 9711(e)(2) was in fact established.

N.T. 6/17/93 at 775–76. This information was elicited by the prosecutor to show that while Jacinto Rios had the same difficult upbringing as his brother, he did not resort to a life of violent crime. The prosecutor made this assertion in one line of his closing argument: "I will tell you what, that man [Jacinto Rios] lived through the same thing he [Appellant] did and guess what, his brother did not kill anyone." N.T. 6/17/93 at 776.

Appellant alleges that this line of questioning and argument was improper because it misled the jury as to Jacinto Rios' criminal record. Appellant contends that at the time of his testimony, Jacinto had multiple convictions and was at that very time being prosecuted for a drug related offense. As such, Appellant claims that counsel was ineffective in failing to object to this line of questioning and impeach Mr. Rios on his record.

■■ This claim is frivolous. First, only one line can be construed as even arguably misleading, when Jacinto Rios testified that he had never "been in trouble." Jacinto Rios' criminal record, attached to Appellant's PCRA Petition, reveals that he had, in fact, one eight year old conviction for possession of a controlled substance with intent to deliver and criminal conspiracy at the time of his testimony. While he was also being prosecuted for a drug related offense at the time of his testimony he was not yet convicted. In his closing argument, the prosecutor did not argue that Jacinto Rios had never been in trouble, rather, he argued that Jacinto had never killed anyone. As such, taken in context, Jacinto Rios' testimony as to his criminal record was not misleading. In addition, Appellant has set forth nothing to prove that, even if these comments were improper, they caused him prejudice. A bald assertion of improper questions in the course of cross examination is insufficient, absent a showing of prejudice, to support a claim for ineffectiveness. *See Albrecht,* 720 A.2d at 701.

■■ Appellant contends that counsel was ineffective in failing to object to the use of his prior conviction for burglary

to establish the § 9711(d)(9) aggravating circumstance. He argues that our cases have produced an inconsistent, arbitrary, and capricious definition of burglary as a *per se* violent crime and that as such it violates his Eighth and Fourteenth Amendment rights to use the conviction to his detriment. Appellant's argument fails because the law was clear at the time of his sentencing, as it is now, that burglary is always classified as a violent crime in Pennsylvania. Appellant cites to *Commonwealth v. Christy*, 511 Pa. 490, 515 A.2d 832 (1986) in which this Court suggested that in order for a burglary to be classified as a violent crime, the Commonwealth may have to present evidence that the defendant actually threatened another with violence or actually used violence. *Christy*, 515 A.2d at 841. Two years later, however, the Court clarified our view of burglary in *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988). In *Rolan*, we explained that the portion of *Christy* discussing burglary was merely dictum and that in Pennsylvania "the crime of burglary has *always* been and continues to be viewed as a crime involving the use or threat of violence to the person." *Rolan*, 549 A.2d at 559. "Every robber or burglar knows when he attempts to commit his crime that he is inviting dangerous resistance." This was the law as it stood at the time of Appellant's conviction and sentencing. It remains so today. *See e.g. Commonwealth v. King*, 554 Pa. 331, 721 A.2d 763, 769–70 (1998); *Commonwealth v. Bracey*, 541 Pa. 322, 662 A.2d 1062, 1075 n. 15 (1995). As our cases have not produced an inconsistent, arbitrary, and capricious definition of burglary as a *per se* violent crime, it was not a violation of Appellant's rights to use a conviction for burglary to establish the § 9711(d)(9) aggravator. As such, counsel could not be ineffective in failing to object thereto.

■■■ Appellant argues that the trial court erred in permitting testimony detailing the facts of his 1975 convictions for robbery, possession of an instrument of a crime, and aggravated assault in order to establish the § 9711(d)(9) significant history of violent crime aggravator. He alleges that counsel was ineffective in failing to properly object.

Specifically, the testimony in question detailed the facts underlying the convictions to the jury. The jury heard how Appellant broke into an apartment, hit the occupant with a sawed-off shotgun, tied the victim up, and burned him. It was also recounted that Appellant demanded money from the man and threatened to kill him. N.T. 6/17/93 at 754–55.

Appellant contends that in order to establish the significant history aggravator, the prosecutor need only show that the defendant had the relevant prior convictions. It is not proper, he contends, to introduce details of the prior convictions, as these details are unnecessary and can only serve to prejudice the jury. This contention is contrary to our law. In *Commonwealth v. Marshall*, 537 Pa. 336, 643 A.2d 1070, 1074 (1994), we held:

> [a] capital sentencing hearing is not a sanitized proceeding limited only to evidence of aggravating circumstances. **Rather, it must, by necessity, inform the jury of the history and natural development of the events and offenses with which the appellant is charged, as well as those which he has been convicted,** so that the jury may truly understand the nature of the offenses and Appellant's character. **The jury simply cannot perform its function in ignorance of the facts of the crime for which Appellant is being sentenced, or the crimes for which he has previously been convicted, to the extent that those crimes may properly support the existence of aggravating circumstances provided in Section 9711(d).**

*Id.* (Emphasis added) (internal citations omitted). Thus, it was perfectly consistent with the law of this Commonwealth for the court to allow details of Appellant's prior crimes to establish the significant history aggravator.[9] As such, Appellant's ineffectiveness claim must fail.

9. Appellant cites, without explanation, *Commonwealth v. Rompilla*, 539 Pa. 499, 653 A.2d 626 (1995), in support of his contention. Any reliance on *Rompilla*, however, is misplaced as in that case we specifically held that the introduction of the details regarding the appellant's prior conviction for rape were properly admitted in support of § 9711(d)(9).

The jury found that the facts of Appellant's case established the 42 Pa.C.S. § 9711(d)(7) aggravating circumstance-that in the commission of the offense, the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense. He now argues that § 9711(d)(7) is unconstitutionally vague and overbroad and that trial counsel was ineffective in failing to raise this issue. This claim must fail, as the same ineffectiveness issue has been previously litigated.

The core of Appellant's argument is that § 9711(d)(7) is overbroad as applied to his case because his actions did not place any of the other persons in the bedroom into a grave danger of death as they were not close to the victim and only a single shot was fired into the back of his head. On direct appeal, we held that trial counsel was not ineffective for not objecting to this instruction. There, we wrote:

Appellant does challenge the sufficiency of the evidence supporting the jury's finding that he knowingly created a grave risk of death to another person in addition to the victim. Appellant contends there was no grave risk of death because Irma, Carmen and her baby were not close enough to the victim when the shot was fired for any of them to have been endangered. We disagree.

*Commonwealth v. Rios*, 546 Pa. 271, 684 A.2d 1025, 1036 (1996). We explained that it is not necessary for the endangered bystander to be in the direct line of fire in order to be placed in a grave risk of death. We further explained that the aggravator has been found in situations when, as here, only a single shot was fired into the victim at close range. *Rios*, 684 A.2d at 1037. As such, we held that there was sufficient evidence to support the jury's finding that the § 9711(d)(7) aggravator was present.

Here, Appellant couches his arguments in terms of a constitutional argument that the aggravator is vague and overbroad. The gist of the ineffectiveness argument, however, is identical to that raised on direct appeal, that the facts of this case do not support finding the aggravator and counsel did raise an

objection. As this ineffectiveness claim was previously litigated, it is not cognizable here. 42 Pa.C.S. § 9544.

Next, Appellant contends that trial counsel was ineffective in failing to object to the trial court's jury instructions at the close of the penalty phase, which were weighed in favor of death in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution as well as Article I, § 13 of the Pennsylvania Constitution. This contention is without basis in law or fact.

Appellant argues that the trial judge gave several examples of how aggravating circumstances could outweigh mitigators, but only one example of how mitigating circumstances could outweigh aggravators. Further, he alleges that the court only once explained to the jury how it could impose a sentence of life in prison.

An examination of the record reveals no irregularities in the instructions of the trial court. The court specifically instructed the jury that "[y]ou have to decide whether to sentence the defendant to death or life in prison. Your sentence will depend on what you find about aggravating circumstances on the one hand and mitigating circumstances on the other hand." N.T. 6/17/93 at 783–84. The court's instructions were consistent with the law of this Commonwealth in that it explained to the jury that if it finds that the aggravating circumstances, if any, outweigh any mitigating circumstances, it must impose death. *Id.* at 784. The court specifically instructed: "Now in all other situations you may not impose the death penalty." *Id.* The court also explained that the jury could also impose life in prison if it could not come to a unanimous decision in favor of death. *Id.* at 785. Further, the court explained that if the jury cannot agree as to whether to impose death or life imprisonment, it must report to the judge, who would enter a verdict of life in prison. *Id.* Contrary to Appellant's contention, the jury was well apprised of its role in determining whether to impose a sentence of death or life imprisonment. It was made very clear that death could only be imposed in one circumstance, when they found that the aggravators out-

weighed the mitigators, whereas a sentence of life in prison could be meted out in every other circumstance. As such, the trial court's jury instruction was consistent with Pennsylvania and federal law. Consequently, trial counsel has no basis to object and was not ineffective.

Appellant claims that the trial court misinstructed the jury as to how it should consider mitigating evidence. Appellant asserts that trial counsel was ineffective for failing to object and pursue this claim.

Specifically, Appellant claims that the trial court "improperly told the jury to consider all of the mitigating evidence *together* in deciding whether Appellant had met his burden of proof regarding *any* mitigating circumstance." Brief of Appellant, at 71 (emphasis original). Appellant reasons that weighing the mitigating evidence as such could result in prejudice in that weakness in establishing any given mitigator will carry over to diminish the proof in establishing any other factor. To the contrary, Appellant states that evidence of each mitigator must be considered individually in determining whether that particular mitigator has been established.

Appellant's claim fails. First, a review of the record shows that the court did not instruct the jury as to weighing the mitigators as characterized by Appellant. The court instructed the jury that they must find that the defendant had proven the mitigating circumstances by a preponderance of the evidence. N.T. 6/17/93 at 788. The court then explained the jury's task of balancing the evidence as to the mitigating circumstances saying, "If the scales tip in favor of any of the mitigating circumstances, then the defendant has proven his burden." Thus, the court instructed the jury to weigh the evidence as to each individual mitigating circumstance.

In addition, even if Appellant were correct in his allegations of error as to the jury instruction, his contention would nevertheless fail under our case law for lack of prejudice. Appellant alleges error in the instructions because of their *potential* to mislead the jury in its balancing of the evidence *so as to* redistribute strong evidence of one mitigator

to a weaker one, possibly causing the jury to find one or neither. In this case, however, both mitigating circumstances that were put forth by the Appellant were found by the jury. As such, Appellant cannot show harm and may not, therefore, prevail here. See *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261 (2000).

Appellant next claims that the trial court failed to adequately instruct the jury as to the nature of aggravating and mitigating circumstances and that trial counsel was ineffective in failing to object. Specifically, he argues that the court erred in instructing the jury that aggravating circumstances "make a first degree murder case more terrible and deserving of the death penalty than not. Mitigating circumstances are those factors which make the case less terrible and less deserving of the death penalty than not." Brief of Appellant at 74 (quoting N.T. 6/17/93 at 745–46.) Appellant argues that in explaining aggravation and mitigation in this way, the court changed the focus from his culpability to the "terrible" nature of the case.

We have addressed this very issue before in *Commonwealth v. Johnson*, 572 Pa. 283, 815 A.2d 563, 587 (2002). In *Johnson*, the exact instruction complained of here was given to the jury. Appellant Johnson argued that the instruction "impermissibly diverted the focus of the jury's life or death deliberation from a reasoned determination as to [Johnson's] personal culpability, to an amorphous and unguided consideration of how terrible 'the case' was." *Johnson*, 815 A.2d at 587. We held:

> We do not find that the instructions of the trial court, as a whole, interfered with the jury's evaluation of the specific mitigation evidence presented by Appellant or their assessment of his personal moral culpability. These instructions merely expressed to the jury, in layman's terms, the purpose for the distinction between aggravating and mitigating circumstances in a capital penalty phase.

*Id.* at 587–88 (quoting *Commonwealth v. Stevens*, 559 Pa. 171, 739 A.2d 507, 526–27 (1999)). It is, therefore, settled law that

the trial court's instructions were not improper. As such, Appellant's ineffectiveness claim fails.

■ Appellant claims that he was denied a fair sentencing proceeding where counsel failed to object to the trial court's instruction to the jury that it could not consider sympathy in its determination. Specifically Appellant takes issue with the following statement:

You should reach a fair decision, and you should not be influenced by passion or prejudice or sympathy or bias or hostility or anything else ...

You cannot let sympathy or bias or any kind of personal emotion or feelings enter into your decision.

N.T. 6/17/93 at 799. He claims that a good deal of evidence was presented, such as the testimony of family members, that had real potential for generating sympathy. He further contends that because these feelings could only have benefited him by making it more likely that the jury would impose a life sentence.

Appellant's contention must fail, as it is contrary to the established case law of this Court. In *Commonwealth v. Lesko*, 509 Pa. 67, 501 A.2d 200 (1985), we dismissed the appellant's claim that the trial court erred in its instruction to disregard sympathy in deciding whether to impose the death penalty. We rejected this contention, writing that:

Read as a whole, the trial judge's charge fully and fairly presented to the jury its duty to consider and weigh the aggravating factors which accompanied this killing against all mitigating factors, including the broad mitigation provision of Section 9711(e) of the Sentencing Code, 42 Pa.C.S. § 9711(e)(8).

*Lesko*, 501 A.2d at 207. Further, the United States Supreme Court has also held that an instruction directing the jury to disregard sympathy in its sentencing determination does not violate the Eighth Amendment. In *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), the Court rejected the very argument set forth by Appellant here. It explained:

This argument misapprehends the distinction between allowing the jury to consider mitigating evidence and guiding their consideration. It is no doubt constitutionally permissible, if not constitutionally required, for the State to insist that the individualized assessment of the appropriateness of the death penalty [be] a moral inquiry into the culpability of the defendant, and not an emotional response to the mitigating evidence.

*Saffle*, 494 U.S. at 492–93, 110 S.Ct. 1257. As it is well established that a jury instruction not to allow feelings of sympathy to influence the sentencing consideration is constitutionally proper, counsel in this case were not ineffective in failing to object to such instruction. Appellant's claim thus fails.

Appellant claims that because the term "significant history" is not defined by Pennsylvania law, the 42 Pa.C.S. § 9711(d)(9) aggravator-that "[t]he defendant has a significant history of felony convictions involving the use or threat of violence to the person" is unconstitutionally vague both on its face and as applied to him. The lack of a concrete definition allows the jury open-ended discretion and "invited them to reach an unconstitutionally arbitrary and capricious decision on the sentence." Brief of Appellant, at 81. He thus argues that counsel was ineffective in failing to object to the use of this aggravator. This Court has rejected this claim on numerous occasions. *See Commonwealth v. Fahy*, 512 Pa. 298, 516 A.2d 689, 697–98 (1986) (appellant's contention that 42 Pa.C.S. § 9711(d) is vague and overbroad was dismissed as being meritless); *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1185 (1999) (recognizing that this issue has been decided on numerous occasions and refusing to revisit the issue); *Commonwealth v. Miller*, 560 Pa. 500, 746 A.2d 592, 604 (2000) (same). For better than twenty years this Court has rejected the very challenge raised by Appellant. We do the same here.

Appellant further contends that testimony elicited from his brother that Appellant has had six children with six women, but had never married the mothers, constitutes the introduction of a non-statutory aggravator into the jury's

penalty determination.[10] Specifically, he argues that it was intended to stereotype him as an irresponsible playboy and to play upon their prejudices against playboys. Despite the fact that trial counsel did, in fact, unsuccessfully object to this testimony, Appellant asserts that trial counsel was ineffective in failing to further pursue the issue.

It is well established that when cross examining a witness, a prosecutor is entitled to question the witness about "any facts tending to refute inferences arising from matters raised during direct testimony," as well as "omissions or acts that are inconsistent with his testimony." *Commonwealth v. Begley*, 566 Pa. 239, 780 A.2d 605, 627 (1999). Further, a trial court's ruling on the admissibility of evidence will not be reversed unless the opponent can show that the court abused its discretion. *Commonwealth v. Spiewak*, 533 Pa. 1, 617 A.2d 696, 699 n. 4 (1992). In this case, Jacinto Rios testified as to Appellant's character on direct examination. He testified that "he always be a good guy to everybody," and that "he is a good person all the time." N.T. 6/17/93 at 765. The prosecutor was entitled to elicit testimony on cross examination intended to refute any inference of good character raised by Jacinto Rios' testimony and to illustrate acts that are inconsistent with that testimony. See *Begley*, 780 A.2d at 627. Ques-

**10.** The actual testimony at issue proceeded as follows:

Q. Sir, your brother has six children, does he not?
Mr. Perri: Objection.
The Court: Overruled.
Q. Does he not?
A. Yes.
Q. He has six children from six different women, is that correct?
A. Correct.
N.T. 6/17/93 at 766.
Further, in his penalty phase closing, the prosecutor argued:
We understand that there are people out in the street who can't read and write and they work and other people who can't read and write and go and steal.
You reach a point in your life where you are a man. And you make decisions and you do the right thing or the wrong thing. This is a man here who has had six children by six different women. Here is a man who made decisions in his life, and you have seen three of them, the three convictions, and now he has made decisions in his life, and nobody has forced him to do it.
*Id.* at 776.

tions eliciting testimony that Appellant fathered several children by several different women merely served to impeach the prior testimony of the witness. The trial court did not abuse its discretion in admitting such testimony. We will not second-guess its decision here. Likewise, it was not improper for the prosecutor to point out this fact in his closing argument. A prosecutor is entitled to argue all reasonable inferences from the evidence presented at trial. *Commonwealth v. Sam,* 535 Pa. 350, 635 A.2d 603, 608 (1993). As such, the prosecutor was entitled to use such evidence in his closing to cast doubt on Jacinto Rios' characterization of Appellant by setting forth a history of irresponsible choices that he had made. Therefore, counsel was not ineffective in failing to pursue this issue.

■ Appellant contends that the trial court erred in failing to instruct the jury that a sentence of life imprisonment means life without the possibility of parole and that counsel was ineffective in failing to object. Appellant cites to *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), wherein the plurality held that due process requires such an instruction when the prosecution expressly places the defendant's future dangerousness at issue and the law of the state would prohibit the defendant's release on parole from a life sentence. Appellant claims that all prior counsel were ineffective in failing to obtain such an instruction and for failing to object to its omission.

The *Simmons* decision was not handed down until 1994, one year after Appellant's sentencing hearing. Prior to *Simmons,* long-standing precedent in Pennsylvania prohibited capital juries from hearing about Pennsylvania's life without parole statute. *Commonwealth v. Smith,* 544 Pa. 219, 675 A.2d 1221, 1233 n. 8 (1996) (citing *Commonwealth v. Christy,* 540 Pa. 192, 656 A.2d 877 (1995)). In *O'Dell v. Netherland,* 521 U.S. 151, 157–67, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997), the United States Supreme Court held that *Simmons* constituted the creation of a new rule of law and was, therefore, not retroactive in application. Moreover, in *Commonwealth v. Smith, supra,* we held that an appellant cannot maintain a claim of ineffectiveness "for failing to request an instruction under

*Simmons* where counsel's actions were predicated on well-established Pennsylvania law prohibiting the grant of such requests or for failing to predict that the law would change...." *Smith,* 675 A.2d at 1233. As in *Smith,* Appellant here cannot maintain an ineffectiveness claim against trial counsel based on *Simmons* when his sentencing predated that decision.

In this case, *Simmons* was decided while Appellant's direct appeal was pending. This does not change our analysis. We encountered this very situation in *Commonwealth v. Jones,* 571 Pa. 112, 811 A.2d 994 (2002). There, we held that just as trial counsel cannot be deemed ineffective for failing to request a not-yet-existent *Simmons* instruction, nor will appellate counsel be ineffective in failing to request a retroactive application of the rule. *Jones,* 811 A.2d at 1005. We explained, "in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved 'at all stages of adjudication up to and including the direct appeal.'" *Id.* (citing *Commonwealth v. Tilley,* 566 Pa. 312, 780 A.2d 649, 652 (2001)). In *Jones,* we held that the appellant had failed to preserve a *Simmons* type instruction through no fault of his own, thus precluding any retroactive application. *Jones,* 811 A.2d at 1005. We hold the same here. Trial counsel did not request, and thus did not preserve, a *Simmons* type instruction. As such, appellate counsel was not ineffective in failing to request a retroactive application on direct appeal.

Appellant claims trial counsel ineffectiveness for failing to object to alleged misconduct that the prosecutor committed in his closing argument of the penalty phase in violation of his rights to due process and a fair trial in violation of the Fifth and Fourteenth Amendments of the United States Constitution and corresponding provisions of the Pennsylvania Constitution.

He sets forth several allegations of impropriety in the prosecutor's closing argument that have already been addressed at length above. He argues that the prosecutor misrepresented the law regarding the "grave risk of death"

aggravator, 42 Pa.C.S. § 9711(d)(9); that the prosecutor misrepresented the criminal record of Appellant's brother, Jacinto Rios; that victim impact testimony was improperly introduced; that the prosecutor made reference to the fact that he has had six children by six different mothers, all out of wedlock; that the prosecutor introduced facts of his prior conviction; and that the jury could not consider mercy in its determination. As these issues have each been individually addressed, we will not again entertain them.

■ Appellant next claims that the prosecutor misstated the law in arguing that the legislature has decided that "there are some murders that just cannot be tolerated; that are more terrible than just what some people call an average murder, and they have enacted laws after careful consideration that certain killings require or sometimes demand that the penalty of death be imposed." N.T. 6/17/93 at 770. This statement was improper, he reasons, in that it leads the jury to believe that the death penalty is mandatory for certain crimes.

This argument is specious. The prosecutor at no point indicated that certain types of murder carry by law a mandatory sentence of death. Further, the statute itself states that "the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstances or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances." 42 Pa.C.S. § 9711(c)(iv). As such, there are certain circumstances in which, because of the balance of aggravating and mitigating circumstances, the death penalty is required by Pennsylvania law. This does not run afoul of constitutional safeguards in that the jury itself has the discretion to determine in the first instance whether such aggravators and mitigators are present. Thus, counsel was not ineffective in failing to object to this portion of the prosecutor's closing argument.

■ Appellant finally asserts that the prosecutor committed misconduct in asking the jury to sentence him to death in

order to send a message to society that the types of crimes committed by Appellant will not be tolerated and that counsel was ineffective in failing to object. N.T. 6/17/93 at 777–78. In *Commonwealth v. DeJesus,* 580 Pa. 303, 860 A.2d 102, 119 (2004) this Court held, as a supervisory matter, that penalty phase arguments requesting that a jury send a message by its verdict are prejudicial *per se.* The decision in *DeJesus,* however, represented a change in the law of this Commonwealth. Prior to that decision, this Court had held that a prosecutor could ask for an imposition of death in order to deter other potential murderers. *Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 449 (1999); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937, 958 (1982). Further, *DeJesus* itself recognizes that its per se rule constitutes a change in the law, explaining that previously such statements were permitted provided that they did not compromise the jury's ability to weigh the evidence objectively. *See DeJesus,* 860 A.2d at 113–119. An attorney will not be deemed ineffective for failing to predict a change in the law. *See e.g. Commonwealth v. Smith,* 544 Pa. 219, 675 A.2d 1221, 1233 (1996). Here, Appellant's trial took place more than a decade before this Court's decision in *DeJesus.* According to the accepted law at the time, a prosecutor was permitted to request that a jury send a message by its sentence. As such, Appellant's claim of ineffectiveness must here fail.

Having addressed all of Appellant's claims of ineffectiveness of counsel, he has failed to establish that trial counsel was ineffective in a single instance. He is consequently unable to establish that there is any arguable merit to a claim of appellate counsel ineffectiveness as required under the layered analysis of *McGill, supra.* As we enunciated in *Rush,* there is no need for us to remand this case to allow Appellant to properly layer claims of ineffectiveness that cannot, as a matter of law, prevail.

■ Appellant has set forth three additional claims for relief under the PCRA that do not arise from a claim of ineffectiveness of counsel. First, Appellant argues that his death sentence was a product of systemic racial discrimination

pervading the Philadelphia District Attorney's office. As such, he contends that it is in violation of the Pennsylvania capital sentencing statute, the Pennsylvania Constitution, and the United States Constitution.

Specifically, Appellant bases this claim on the study by Professors David Baldus and George Woodworth entitled *Racial Discrimination and the Death Penalty in the Post–Furman Era: An Empirical and Legal Overview, with Recent Findings from Philadelphia*, 83 Cornell L.Rev. 1638 (1998). Citing the study, Appellant claims that the pervasive racial discrimination at the district attorney's office made it at least 3.25 times more likely that he would receive the death penalty than if the victim of the crime had been black. Brief of Appellant, at 76. Further, he argues that the office trained its attorneys to strike African American jurors. Because this information was allegedly not available at the time of the judgment in this case, Appellant contends that it is cognizable for the first time on PCRA review.

This Court has specifically held that the Baldus / Woodward study is not sufficient to give rise to a PCRA claim under 42 Pa.C.S. § 9545(b)(1)(ii). In *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585, 588–89 n. 4 (2000), we wrote: "The statistics which comprise the study were of public record and cannot be said to have been 'unknown' to Appellant. As such, this information does not fall within the purview of 42 Pa.C.S. § 9545(b)(1)(ii)." Likewise, Appellant's claim here cannot be considered after discovered evidence under any provision of the Act and is thus not cognizable under the PCRA.

■ Further, neither this Court nor the United States Supreme Court will permit generalized allegations of discrimination or statistics showing a disproportionate application of the death penalty to members of certain groups to invalidate such sentences on constitutional grounds. In *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), the United States Supreme Court rejected appellant's claim that an earlier study by Baldus demonstrates that the death penalty is meted out in a racially discriminatory manner, and is

thus in violation of the Eighth and Fourteenth Amendments. The Court held that the statistical analysis presented by Baldus was not sufficient to prove that the death penalty had been applied in a discriminatory manner in violation of the equal protection clause *in his case.* The Court held:

> Our analysis begins with the basic principle that a defendant who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination. A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination had a discriminatory effect on him. Thus, to prevail under the Equal Protection Clause, McClesky must prove that the decision makers in *his* case acted with discriminatory purpose.

*McCleskey,* 481 U.S. at 292, 107 S.Ct. 1756. (emphasis original, internal citations omitted). The Court likewise held that McClesky's Eighth Amendment claim failed:

> Despite McClesky's wide-ranging arguments that basically challenge the validity of capital punishment in our multiracial society, the only question before us is whether in his case, the law of Georgia was properly applied.

*Id.* at 319, 107 S.Ct. 1756.

In *Commonwealth v. Crews,* 552 Pa. 659, 717 A.2d 487 (1998) we rejected appellant Crews' similar claim that the death penalty was unconstitutional as applied in that it was disproportionately applied to the poor. In dismissing his claim, we cited to *McCleskey, supra,* and stated further that "Crews also fails to articulate how the death penalty is unconstitutional as applied to him." *Crews,* 717 A.2d at 489.

In this case, Appellant only proffers statistics and generalized claims that the death penalty is applied in Philadelphia County in a racially discriminatory manner. He has not set forth any evidence to show that the allegedly pervasive discriminatory atmosphere affected *his individual case.* Mere allegations of general bias and statistics are not sufficient to meet the burden of proving purposeful discrimination as to Appellant's case. As such, this claim fails.

Appellant next asserts that he was not provided meaningful proportionality review on direct appeal by this court pursuant to the now repealed 42 Pa.C.S. § 9711(h)(3)(iii).[11] On direct appeal, we explained: "After reviewing the sentencing data compiled by the Administrative Office of Pennsylvania Courts, we find that the sentence of death here is not excessive or disproportionate." *Rios*, 684 A.2d at 1037. Appellant, in turn, makes the unsubstantiated claim that the AOPC database used by this Court for the review was fundamentally flawed and inaccurate. We have held on several occasions that the method of proportionality review employed by this court met the requirements of 42 Pa.C.S. § 9711(h)(3)(iii). *Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426, 440–41 (1997); *Commonwealth v. Harris*, 550 Pa. 92, 703 A.2d 441, 451–52 (1997); *Commonwealth v. Albrecht* 554 Pa. 31, 720 A.2d 693, 708 (1998). As such, this claim is without merit.

Appellant finally asks this court to remand this case for another evidentiary hearing and/or permit him the opportunity to amend his pleadings. Every case must have an ending. This case will end here. A party is not entitled to an evidentiary hearing where there are no issues of material fact. *Commonwealth v. Hardcastle*, 549 Pa. 450, 701 A.2d 541, 543 (1997). We have thoroughly examined each of the Appellant's claims and find that there are no issues that warrant additional evidentiary exploration. Likewise, a party may not resurrect a claim utterly devoid of merit by being afforded the opportunity to amend his pleadings *ad infinitum*. Appellant had a full and fair opportunity to litigate his petition under the PCRA before the court below, which denied him relief, and on appeal to this Court. After reviewing Appellant's claims, we find no error and affirm the holding of the PCRA court.

11. 42 Pa.C.S. § 9711(h)(3)(iii) and the portion of § (h)(4) that referenced proportionality review were removed from the death penalty statute on June 25, 1997, effective immediately. The act deleting the requirements of proportionality review were prospective in scope and cannot, thus, be applied retroactively. *See Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426, 439 (1997). As such, because Appellant's conviction occurred before the effective date of the amendments, he was entitled to proportionality review.

Justice FITZGERALD did not participate in the consideration or decision of this case.

Justice CASTILLE, EAKIN and BAER join the opinion.

Justice SAYLOR files a concurring and dissenting opinion in which Justice BALDWIN joins.

Justice SAYLOR, concurring and dissenting.

I concur in the result with respect to the denial of Appellant's guilt-phase claims. As to certain penalty-phase claims, however, I would remand for a further hearing and specific findings of fact and conclusions of law from the PCRA court.

Appellant argues that his trial and appellate counsel were ineffective in failing to raise and preserve a claim that the prosecutor's exhortation in his closing remarks to the jury to "send a message to society" by returning a death sentence were inflammatory and prejudicial. *See* N.T., June 17, 1993, at 777–78 (reflecting the prosecutor's statement to the sentencing jury as follows: "You have, for the protection of society, to send a message to society that no, we will not tolerate this, ... and that when you impose the death penalty, send that message, and it is up to you, the law is allowing and giving you the opportunity to use that sword in your hand and you decide what you did [sic]."). The majority rejects this claim on the basis that, although the Court has recently held that such arguments are improper and *per se* prejudicial, *see Commonwealth v. DeJesus,* 580 Pa. 303, 860 A.2d 102 (2004), they were permitted at the time of Appellant's trial. *See* Majority Opinion, *slip op.* at 40.

In fact, however, the Court explained in *DeJesus* that it had not consistently approved such arguments, but instead, had "strongly admonished prosecutors to refrain from exhorting jurors to use their verdict to 'send a message' to the community or the judicial system." *DeJesus,* 580 Pa. at 325, 860 A.2d at 116 (citing *Commonwealth v. Crawley,* 514 Pa. 539, 559, 526 A.2d 334, 344 (1987)). *Crawley,* cited in *DeJesus* for the proposition that send-a-message arguments analogous to that made in the present case were actually forbidden, was the

most recent decision in this line as discussed in *DeJesus* that was available to counsel at the time of Appellant's 1993 trial. Therefore, I cannot support the majority's reasoning on this claim. Rather, I would remand for development concerning appellate counsel's ineffectiveness per *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014 (2003), with a directive to the PCRA court to permit a hearing concerning all layered aspects of that derivative claim.

Appellant also claims that his trial counsel unreasonably failed to investigate and present substantial life-history and mental-health mitigation evidence at the penalty phase of trial. On the life-history aspect, the majority indicates that Appellant specifically instructed trial counsel not to present additional family witnesses and threatened counsel. *See* Majority Opinion, at 619–20, 920 A.2d at 811. The PCRA court, however, did not rest its decision on this evidence or make a credibility assessment in this regard. Moreover, there was evidence of additional discussions with Appellant, *see, e.g.,* N.T., April 4, 2000, at 67–68; trial counsel further testified at the post-conviction hearing that he did not believe that he was impeded from presenting all of the mitigating evidence that he had available to him, *see* N.T., April 4, 2000, at 141–42; and counsel did secure family witness testimony. In these circumstances, I have difficulty with the application of *Commonwealth v. Sam,* 535 Pa. 350, 368–69, 635 A.2d 603, 612 (1993), to foreclose examination of the stewardship of trial and appellate counsel. Rather, in such situations, I believe that a factfinder should examine the totality of the circumstances to determine whether and to what degree a capital defendant has forbidden the presentation of mitigating evidence. Particularly given the dynamic character of death-penalty litigation, when combined with the substantial pressures associated with a capital trial, I do not support reliance by an appellate court upon isolated remarks taken out of their full context, especially in the absence of relevant factual findings. Indeed, given the consequences of this sort of decision, where a defendant chooses to waive mitigation, this Court has indicated that the trial court should be involved and colloquy the defendant to

confirm a knowing, voluntary, and intelligent waiver of mitigation. *See Crawley*, 514 Pa. at 550–51 n. 1, 526 A.2d at 340 n. 1.[1]

In reviewing claims of deficient stewardship associated with the presentation of mitigating evidence, an evaluation of the adequacy of counsel's underlying investigation is a threshold inquiry. *See, e.g., Commonwealth v. Malloy*, 579 Pa. 425, 454, 856 A.2d 767, 784 (2004). This is so because strategic judgments made by counsel are assessed in light of the reasonableness of the investigation performed. *See id.* at 460, 856 A.2d at 788 (citing *Wiggins v. Smith*, 539 U.S. 510, 528, 123 S.Ct. 2527, 2539, 156 L.Ed.2d 471 (2003)). *See generally Williams v. Taylor*, 529 U.S. 362, 364, 120 S.Ct. 1495, 1498, 146 L.Ed.2d 389 (2000) (explaining that capital counsel have the "obligation to conduct a thorough investigation"). Additionally, the Unit-

---

1. Notably, the Sam Court emphasized that such a colloquy was conducted in the case. *See Sam*, 535 Pa. at 368, 635 A.2d at 611. While I recognize that the *Sam* and *Crawley* decisions concerned defendants' waivers of all mitigation evidence, I see no reason why the requirement of a colloquy should not also pertain when a capital defendant, contrary to his counsel's advice and prejudicial to his interests, elects to forego a substantial aspect of a mitigation case that counsel believes may be dispositive.

It also bears mention that counsel's presentation of life-history mitigation at the penalty phase of Appellant's trial was exceptionally truncated; indeed it spans just two pages of the transcript. *See* N.T., June 17, 1993, at 764–65. In terms of life history, the jurors heard only that Appellant was born in Puerto Rico, that he was ten years old when he came to the United States, and that his mother committed suicide by setting herself on fire. *See id.* By comparison, the post-conviction case included, *inter alia*, evidence that Appellant was abandoned at an early age by his father; witnessed several suicide attempts by his mother prior to her eventual self-immolation; was disfavored and abused by relatives when he came to the United States; was ultimately barred from his father's household around the age of twelve or thirteen; became addicted to heroin during this time period; and engaged in bizarre behaviors and suffered from delusions from an early age. A fair amount of this information was contained in pre-sentence reports available to counsel. *See* 1984 Pre–Sentence Investigation Report ("After his mother's departure, the family structure dissolved" and Appellant was a "product of a broken home and subsequent [to the] reported suicide of his mother, he appeared to have been reared without the benefit of adequate discipline, guidance, love and supervision."). The United States Supreme Court has repeatedly recognized the potential value of this sort of evidence in terms of mitigation in a capital case. *See, e.g., Wiggins*, 539 U.S. at 535, 123 S.Ct. at 2542 (citing cases).

ed States Supreme Court has admonished: "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins,* 539 U.S. at 527, 123 S.Ct. at 2538.

Here, concerning the mental-health aspect of Appellant's claim, trial counsel possessed various records indicating that Appellant had, on multiple occasions, been diagnosed as suffering from a major mental health condition, namely, paranoid schizophrenia, and apparently had been treated with antipsychotic medication by the government while in prison. Despite this information, however, counsel did not consult a mental health professional in connection with the penalty defense and, at the post-conviction stage, was unable to articulate a strategic or tactical reason for having failed to do so. *See* N.T., April 4, 2000, at 112–13, 117, 152–53.

The majority displaces any review of counsel's investigation by relying upon the entry of a stipulation that counsel secured in the penalty phase of trial that Appellant suffered from a "schizophrenic reaction" ten years before his offenses. *See* Majority Opinion, at 620–21, 920 A.2d at 812. The majority reasons that counsel's decision to proceed solely on the stipulation cannot have represented deficient stewardship, as "the Commonwealth had reliable evidence that Appellant was not mentally ill, was fully capable of presenting [sic] the criminality of his acts, and was not under extreme mental or emotional stress at the time of the crime." *Id.* at 621, 920 A.2d at 812. This reasoning is faulty, in the first instance, as the source of the information referenced by the majority was Dr. John S. O'Brien, who did not examine Appellant until seven years after his trial. *See* N.T., July 25, 2000, at 9–10. Counsel thus could not have relied upon a report that did not yet exist to forego an investigation into his client's mental health condition. Additionally, it would seem to me to be an untenable practice to rely upon an adverse party's expert witness to omit an investigation, particularly in light of the information contained in Appellant's records.[2]

**2.** Finally, the reasoning is also not wholly accurate, because the purport of Dr. O'Brien's post-conviction testimony was not that Appellant was

Counsel's actual, stated basis for his strategic decision was to avoid negative references in various records, for example, to Appellant having "social judgment [that] is impaired and self centered." *See, e.g.,* N.T., April 3, 2000, at 55. Again, however, the proper threshold focus in assessing this claim is on the adequacy of counsel's investigation supporting this strategic decision. *See, e.g., Malloy,* 579 Pa. at 454, 856 A.2d at 784. In this regard, in the post-conviction proceedings, counsel was unable to explain how it was that he could consider the relative merits of presenting a developed case of mental-health mitigation without consulting a mental health professional, particularly where counsel seemed to possess at best a rudimentary understanding of the mental health information that he had in his possession.[3] Capital counsel should be well aware that mental health disorders may provide context for impulsivity and/or impaired judgment. *See* American Bar Association, ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.8.3(F) (explaining that capital counsel should consider presenting "[e]x-

---

entirely free from mental illness; rather, it was that Appellant did not suffer from paranoid schizophrenia or a psychiatric condition. Dr. O'Brien did, however, render a mental-health diagnosis of alcohol and mixed substance abuse by history, which is recognized under the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"). *See* N.T., July 25, 2000, at 92. Further, he indicated that he did not have enough information concerning whether Appellant suffered from any condition under the DSM's Axis II categorization. *See* N.T., July 25, 2000, at 90 ("I think that he has a variety of problems, but that does not render an Axis II, because I don't feel I have enough information."); *id.* ("I'm not concluding he doesn't suffer from other problems. . . ."). Various aspects of Dr. O'Brien's testimony also highlighted the potential value of mental-health evidence in terms of providing context. *See, e.g., id.* at 103 (reflecting Dr. O'Brien's explanation that neglect and abandonment is "[o]ftentimes connected with development of his behavior and problems with the law").

3. Counsel testified that he did not believe that he knew what a schizophrenic reaction was, other than it was some type of a psychiatric problem, "probably having something to do with some type of split or bipolar personality." N.T., April 3, 2000, at 51. Further, despite that the reference to a ten-year-old "schizophrenic reaction" was the sole source of evidence concerning mental-health mitigation, counsel testified that he did not consider it important that the jury be advised as to what the reference meant. *See id.* at 59–60.

pert witnesses to provide medical, psychological, sociological or other explanations for the offense(s) for which the client is being sentenced"); *id.,* Commentary (indicating that "[t]he assistance of one or more experts (e.g. social worker, psychologist, psychiatrist, investigator, etc.) may be determinative as to outcome" of a capital sentencing proceeding).[4]

The majority also indicates that, since the jury found both mitigators advanced by Appellant, *i.e.,* those pertaining under Sections 9711(e)(2) and (e)(8) of the Judicial Code, 42 Pa.C.S. §§ 9711(e)(2), (e)(8), trial counsel's failure to offer any additional evidence concerning those mitigators could not be prejudicial. *See* Majority Opinion, at 621, 920 A.2d at 812 (citing *Commonwealth v. Marshall,* 571 Pa. 289, 812 A.2d 539 (2002), for the proposition that "appellant fails to establish prejudice in connection with an ineffectiveness claim based on counsel's failure to investigate and present additional evidence in support of a finding of a mitigating circumstance when that mitigating circumstance was already found to exist without the benefit of the additional evidence."). I have factual and conceptual differences with this reasoning, however. First, it is not at all clear to me that any member of the sentencing jury in this case found the mitigating circumstance at Section 9711(e)(2) that "[t]he defendant was under the influence of extreme mental or emotional disturbance" at the time of his capital crime. The verdict slip reflects that the jurors recorded the following:

The mitigating circumstance(s) found by one or more of us (is)(are):

(1) Loss of Mother

(2) Mental Illness

(3) Plea of Children

(4) Plea of Brother

---

4. The 1989 ABA guidelines were available at the time of Appellant's trial and have been recognized by the United States Supreme Court to be appropriate "guides to determining what is reasonable" in capital litigation. *Wiggins,* 539 U.S. at 524, 123 S.Ct. at 2537 (citation omitted).

Particularly given the cryptic character of the stipulation concerning Appellant's "schizophrenic reaction," and the remoteness of the finding from the time of Appellant's offenses, it seems more likely to me that the specification of "mental illness" among catch-all-type mitigating factors reflected a comment on Appellant's background and character pursuant to the Section 9711(e)(8) mitigator and not a finding that he was, at the time of his offenses, "under the influence of extreme mental or emotional disturbance" pursuant to Section 9711(e)(2). Indeed, there was no evidence offered on the record, or argument made by counsel, that would define a "schizophrenic reaction," support a conclusion that such a reaction was an extreme mental or emotional disturbance, or concretely relate such reaction to the time of Appellant's offenses ten years later.[5]

Additionally, the majority's statement that "the jury" found one or more mitigators is misleading. As previously noted, consistent with established capital sentencing procedure, the verdict slip reflects only a notation that "one or more" jurors found the noted mitigators. This is significant because, if there was additional, strong evidence of a particular mitigator, there may be a reasonable possibility that such evidence would have persuaded additional jurors, and only one of twelve jurors need be persuaded to avoid a death verdict. *See* 42 Pa.C.S. § 9711(c)(1)(iv). Further, the selection aspect of capi-

---

**5.** Trial counsel's entire argument to the jury concerning the mitigator was as follows:

> The other mitigating circumstance is the mental capacity of the defendant. You will hear the law again as to that. Do not listen to me.
>
> You will hear from Judge Riber [sic], who will talk about the law. You also heard about the schizophrenic tendencies that he has. That is also something that will show that that specific circumstance outweighs any aggravating circumstances in this case.

N.T., June 17, 1993, at 781. Counsel's entire penalty-phase argument covers only four pages of transcript and consists predominately of generic comments about the seriousness of the case, the nature of the death penalty, and disadvantages associated with life in prison. *See id.* at 778–82. His discussion of mitigating circumstances is on a single page and, in terms of specifics, in addition to the above, encompasses only an indication that Appellant's daughters and brother loved him. *See id.* at 780.

tal sentencing entails an individualized weighing process in which, obviously, the strength of the evidence is highly relevant. *See Commonwealth v. Hughes,* 581 Pa. 274, 363, 865 A.2d 761, 815 (2004) ("[T]he penalty determination [in a capital case] is a qualitative one, in which the weight and detail of a particular presentation is likely to impact upon the deliberative process." (citation omitted)). *See generally Commonwealth v. Trivigno,* 561 Pa. 232, 257–58, 750 A.2d 243, 256–57 (2000) (Saylor, J., concurring) (describing a capital sentencing body's separate eligibility and selection decisions). Finally, some categories of mitigators, such as life history, are very broad and can subsume many different types of life circumstances that can serve as effective mitigation. I therefore have difficulty with a broad-based application of the principle from *Marshall* that a finding of some evidence of mitigation in a mitigation category, particularly the catch-all circumstance, forecloses all possible claims that counsel unreasonably failed to investigate and present additional evidence of that general type.

Notably, *Marshall* couched this principle as an encapsulation of a narrow footnote in *Commonwealth v. Scott,* 561 Pa. 617, 752 A.2d 871 (2000), which, in substance, states only that the failure to adduce vague, supplemental evidence of drug abuse treatment was non-prejudicial. *See id.* at 627–28 n. 7, 752 A.2d at 877 n. 7. I fully support the notion that a failure on the part of trial counsel to adduce redundant evidence concerning a found mitigator will not satisfy a post-conviction petitioner's burden to prove prejudice. I have difficulty, however, with transporting this logic to bar claims that are based on substantial differences between the weight or type of the evidence that was presented at trial and that which is presented at the post-conviction stage. *See Commonwealth v. Brown,* 544 Pa. 406, 425, 676 A.2d 1178, 1187 (1996) (allowing for the possibility of post-conviction relief "if it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued" (citation omitted)).[6] Thus, I would not extend *Mar-*

6. It is obviously necessary in undertaking such assessment to guard against the distorting effects of hindsight. See *Commonwealth v. How-*

*shall's* characterization of *Scott* to evidence that may add substantial weight to the impact of a mitigating circumstance category, but rather, would limit it to situations in which evidence substantially overlaps.[7]

Appellant presented a developed case of life-history and mental-health mitigation at the post-conviction stage, including testimony that such evidence was reasonably available at the time of Appellant's trial. *See, e.g.,* N.T., November 23, 1999, at 3–259 (testimony of Lawson F. Bernstein, Jr.); N.T., February 1, 2000, at 6–126 (Ruth Latterner, PhD). The PCRA court discounted the post-conviction life-history evidence in light of the minimal evidence that was presented at trial and credited a strategic decision by trial counsel to limit mental-health mitigation evidence without making any assessment of the underlying investigation. As I find such approach to be inconsistent with prevailing standards in the capital arena, I would vacate the court's decision concerning penalty only and remand for an adequate assessment and to conform the record to *McGill.*[8] Further, I would recognize that the PCRA court's perspective concerning the relative weight of the testimony of Appellant's and the Commonwealth's post-conviction experts, respectively, concerning whether Appellant suffers from para-

*ard*, 553 Pa. 266, 274, 719 A.2d 233, 237 (1998). At the same time, however, where it can be demonstrated that an alternative not chosen offered a potential for success substantially greater than the course actually pursued, a finding that a given strategy lacked a reasonable basis may be warranted. *See id.*

7. I find the majority's decision particularly troubling to the extent that it can be read as suggesting that a finding of any catch-all mitigating circumstance by at least one juror will foreclose a challenge based upon a capital attorney's failure to investigate and present other reasonably available catch-all-type evidence of a different character. Measured against their facts, neither *Scott* nor *Marshall* supports such a proposition.

8. In light of the calculated nature of Appellant's crimes and his criminal history, I recognize that this was a particularly difficult case for the defense at the penalty phase of trial. Nevertheless, I believe that the judicial review in this case should fairly reflect an acknowledgment that trial counsel's penalty-phase presentation was very weak, and that there was considerable information available that would have presented a better case of mitigation. Concerning the weight of the latter, I would leave the assessment to the PCRA court in the first instance, upon correction of the deficiencies noted above.

noid schizophrenia and/or cognitive impairment is relevant to the essential inquiry concerning prejudice. However, I would also instruct the court that the dispositive consideration as concerns prejudice is whether there is a reasonable probability that Appellant's entire mitigation case proffered on post-conviction review (to the extent that it is not rejected on credibility grounds) may have made a difference to at least one or the twelve jurors in their selection (weighing) decision. *See Wiggins,* 539 U.S. at 536–37, 123 S.Ct. at 2543; *Malloy,* 579 Pa. at 462, 856 A.2d at 789.

Justice BALDWIN joins this concurring and dissenting opinion.