**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| FRANK ROY DAPRA | |
| Appellant | No. 258 WDA 2015 |

Appeal from the PCRA Order January 23, 2015
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0002781-2010

BEFORE:  LAZARUS, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 10, 2015**

Frank Roy Dapra appeals from the order imposed by the Court of Common Pleas of Westmoreland County, which denied his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Upon careful review, we affirm.

The PCRA court has set forth the relevant facts as follows:

M.C. was living in the Borough of Trafford in June of 2010 when she reconnected with Dapra, a man with whom she had a previous relationship. When Dapra told her that he had nowhere to stay, M.C. allowed him to stay temporarily at her apartment, a duplex. M.C. testified that while Dapra was staying at her apartment, she believed that he tried to steal a computer and her debit/credit card. M.C. told Dapra that he was no longer welcome at her apartment, and asked him to leave.

Some days later, in the early morning hours of July 15, 2010, M.C. was laying on her couch watching television when she was awakened by a noise at her front door. Dapra came in the door, and M.C. told him he was not welcome there and asked him to leave. Dapra and M.C. began arguing. Dapra grabbed M.C.,

held her down on the sofa, and raped her. M.C. testified that she repeatedly told Dapra to stop, but that he continued to use force in order to vaginally penetrate her with his penis. He also told her that he was never going to let her go. At trial, M.C. clearly described the details of Dapra's sexual assault. When he was finished, Dapra told M.C. that he was sorry. He removed $160.00 and several medications from M.C.'s purse, and left the duplex apartment.

M.C. immediately tried to call her best friend, Patrick, who lived beside her in the other part of the duplex apartment. While she was doing so, she saw Trafford Police Officer [Doug] Sam on patrol, and she flagged him down. She initially only reported that Dapra had stolen items from her purse, and did not reveal that Dapra had raped her. M.C. did disclose the details of the rape to her friend Patrick later that morning when she finally returned to her apartment. Officer Sam came to M.C.'s apartment, and M.C. eventually told him about the sexual assault. She agreed to be examined at Forbes Regional Hospital, where she was also interviewed by a county detective.

The rape kit, collected from M.C. at the time of her examination at Forbes Regional Hospital, was analyzed at the Pennsylvania State Police Crime Laboratory. The Commonwealth and the defense agreed to a stipulation as follows:

> Jennifer Badger of the Greensburg Regional Laboratory, examined rape kit materials. She found no seminal material in the rectal, oral or vaginal swabs. She found the presence of blood on the vaginal swab, which was insufficient for further testing. The sample of underwear indicated the presence of blood, but contained insufficient amount to do further testing. Spermatozoa were identified on the underwear, inside the crotch and lower front, sample of which was sent to the DNA lab. The amount of seminal material was small, graded 1 on their scale of 1 to 4, the lowest indication of amount.

> Sabine Panzer-Kaelin, of the Pennsylvania State Police DNA Lab, would testify that she analyzed the material sent from the serology lab, and found that due to the nature of the sample, no interpretation could be made to include or exclude Frank Dapra in the lower front underwear. Regarding the crotch of the underwear, an insufficient amount of DNA made the sample un-interpretable so that

no comparison was made to Frank Dapra or anyone.
Everything did match the victim [M.C.]

Patrick Daugherty, M.C.'s friend and neighbor, testified that he
saw Dapra at M.C.'s door in the early morning hours of July 15,
2010, saw him enter the apartment, and heard Dapra and M.C.
arguing. He testified that he was a bit concerned for M.C., but
because he did not involve himself in her personal business, he
went upstairs to his bedroom and fell asleep. Daugherty was
awakened at approximately 4:00 a.m. by a frantic telephone call
from M.C., but before he could assist her, Officer Sam drove by
on patrol and M.C. stopped him. M.C. went with the officer to be
interviewed. Daugherty testified that when M.C. returned to the
house later that morning, she seemed to be acting unusually,
and actually fell asleep on his couch. Sometime later, M.C.
disclosed to Patrick that Dapra had assaulted her. Daugherty
encouraged M.C. to call the police, and an officer eventually
arrived and initiated the investigation that gave rise to the
charges in this matter.

PCRA Court Opinion, 1/23/15, at 2-4 (citations and quotation marks
omitted).

On March 8, 2011, following a two-day trial, a jury convicted Dapra of
rape, sexual assault and indecent assault, but found him not guilty of
robbery and access device fraud. Following several continuances, on March
2, 2012, the court determined Dapra to be a sexually violent predator (SVP),
and sentenced him to 7½ to 20 years' imprisonment. Dapra filed a timely
post-sentence motion, which the court denied on June 2, 2012.

Dapra filed a direct appeal to this Court, which denied relief on April
11, 2013. He subsequently sought allowance of appeal, which our Supreme
Court denied on November 11, 2013.

Dapra filed a *pro se* petition for PCRA relief on January 3, 2014.
Counsel was appointed and, on February 13, 2014, filed an amended

petition. On December 15, 2014, a PCRA hearing was held, and on January 23, 2015, the PCRA court entered an order denying the petition.

Dapra filed a timely notice of appeal to this Court, in which he raises the following claims:

1. Whether the PCRA court erred in finding that trial counsel was not ineffective despite his failure to object to irrelevant and prejudicial testimony given by the victim.

2. Whether the PCRA court erred in finding that trial counsel was not ineffective despite his failure to object to hearsay testimony regarding statements made by the victim to a nurse.

3. Whether the PCRA court erred in finding that trial counsel was not ineffective despite his failure to challenge through post-sentence motions or appeal the [SVP] determination despite the [Sexual Offenders Assessment Board's] witness relying on "facts" not supported and/or contradicted by the record.

4. Whether the PCRA court erred in finding that trial counsel was not ineffective despite his failure to object to multiple layers of hearsay testimony at the time of the post-sentence motions hearing.

Appellant's Brief, at 5.

The standard and scope of this Court's review of the denial of a PCRA petition is as follows:

[I]n reviewing the propriety of an order granting or denying PCRA relief, we are limited to determining whether the evidence of record supports the determination of the PCRA court, and whether the ruling is free of legal error. Great deference is granted to the findings of the post-conviction court, and these findings will not be disturbed unless they have no support in the certified record.

***Commonwealth v. Payne***, 794 A.2d 902, 905 (Pa. Super. 2002).

With regard to claims of ineffective assistance of counsel, the law presumes that trial counsel was effective. **Commonwealth v. Rios**, 920 A.2d 790, 805 (Pa. 2007). Our Supreme Court has set forth the following standard for reviewing ineffective assistance of counsel claims:

> To prevail on an ineffectiveness claim, Appellant must satisfy, by a preponderance of the evidence, the Sixth Amendment performance and prejudice standard set forth in **Strickland v. Washington**, 466 U.S. 668 (1984). This Court has divided the performance component of **Strickland** into two sub-parts dealing with arguable merit and reasonable strategy. Thus, Appellant must show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his or her action or omission; and Appellant suffered prejudice as a result. With regard to "reasonable basis," we conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." To establish **Strickland** prejudice, Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

**Commonwealth v. Watkins**, 108 A.3d 692, 702 (Pa. 2014) (internal citations omitted).

Dapra first claims that his trial counsel was ineffective for failing to object to testimony about M.C.'s life. In response to questions from the Commonwealth, M.C. testified that she met Dapra when she was sixteen years old and that they had a child together, who was placed for adoption with one of her relatives. She further testified that she got married to another man in 2007, and that in 2009, when she was five months pregnant, she was involved in an accident and sustained serious injuries. In

October 2009, she gave birth to a son who died in January 2010, after which her marriage ended.

At the PCRA hearing, the following exchange took place between PCRA counsel and trial counsel:

Q:    Now, there was also testimony in the trial transcript that the victim's marriage was falling apart, she was married to another individual following [her car] accident and the loss of that child, do you recall that testimony?

A:    I don't specifically recall that.

Q:    Now, would you have any reason for not objecting to those two lines of testimony?

A:    Well, in general, I thought they were not harmful to my client.  The jury knows the witness is a human being and has a certain place where they are at in life, and I felt picking on little details that had absolutely nothing to do with the core facts of the case but yet spoke about what the person was testifying, I thought it was better strategy to let those go rather than try to pick on little facts when it was the important facts that we were looking at.

N.T. PCRA Hearing, 12/15/14, at 7-8.

Trial counsel had a reasonable basis for not objecting because attacking the witness/victim by continuously interrupting her testimony would have undermined his strategy of focusing "on the core facts of the case." *Id.* at 8.  Nevertheless, we note that trial counsel did object to some of the Commonwealth's direct examination of M.C., for example when she was asked how she was feeling after her child passed away and whether her father was supportive of her relationship with Dapra.  N.T. Trial, 3/7/11, at

69, 94-95. In the first instance, the court sustained the objection, and in the second, the Commonwealth withdrew the question.

Dapra also suggests that trial counsel was ineffective for failing to object to M.C.'s testimony regarding the child they had together and his failure to help with the child. At the PCRA hearing, trial counsel testified:

> The whole concept of the two parties having this child together, because I believe Mr. Dapra wasn't going to testify, the whole idea I had, sort of an undercurrent running there was, one, no rape occurred, and two, the jury would find out there had been a prior sexual relationship between these two people by virtue of the fact that they had a child together and that facts were coming in with me knowing Mr. Dapra was not going to take the stand the jury may, in the back of their minds, think this was consensual if, in fact, any force did occur.

N.T. PCRA Hearing, 12/15/14, at 10.

Because counsel believed that M.C.'s testimony could undermine the Commonwealth's ability to prove lack of consent, he had a reasonable basis for his strategy and Dapra did not prove that his trial counsel was ineffective for not objecting to the testimony. *See Watkins*, *supra*.

Dapra next alleges that trial counsel was ineffective for failing to object to hearsay testimony by M.C.'s nurse, Bethany Husband. Specifically, Dapra challenges references to a questionnaire the nurse filled out with M.C.'s answers regarding the sexual assault that took place on July 15, 2010. The questionnaire included questions to be answered "yes," "no," or "unsure" in order to give Nurse Husband more information about M.C.'s version of what occurred during the sexual assault, such as whether there was vaginal

penetration and whether she was choked, hit, or threatened verbally or physically during the assault. N.T. Trial, 3/8/14, at 129.

Hearsay is "a statement that the declarant does not make while testifying at the current trial or hearing [that] a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801. Hearsay is generally inadmissible, however there is a "medical treatment exception," which provides:

> **Rule 803. Exceptions to the Rule Against Hearsay— Regardless of Whether the Declarant Is Available as a Witness**
>
> . . .
>
> **(4) Statement Made for Medical Diagnosis or Treatment.** A statement that:
>
> (A) is made for—and is reasonably pertinent to—medical treatment or diagnosis in contemplation of treatment; and
>
> (B) describes medical history, past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment or diagnosis in contemplation of treatment.
>
> *Comment:*
>
> . . .
>
> This rule is not limited to statements made to physicians. Statements to a nurse have been held to be admissible.

Pa.R.E. 803(4), citing to **Commonwealth v. Smith**, 681 A.2d 1288 (Pa. 1996).

Here, Nurse Husband testified to the questionnaire, which was used as part of the rape kit procedure at Forbes Regional Hospital and falls within the scope of the medical treatment exception. Therefore, trial counsel was not

ineffective in failing to object to Nurse Husband's testimony, which was clearly admissible.

Third, Dapra alleges that trial counsel was ineffective for failing to challenge, in a post-sentence motion or on appeal, the finding that he was an SVP. Dapra claims that testimony offered by Herbert Hays of the Sexual Offenders Assessment Board was improper because Hays "relied on" incorrect information about Dapra when he concluded that Dapra was an SVP, specifically that Dapra stole M.C.'s credit card and money from her after the sexual assault. However, Dapra was acquitted of the theft-related charges. Nevertheless, Hays also testified that he considered other factors, such as Dapra's criminal history, when determining whether Dapra was an SVP and therefore, did not rely solely on the robbery and device access charges for which Dapra was acquitted. Hence, we find no merit in Dapra's claim.

Section 9799.12 of the Sentencing Code defines an SVP, in relevant part, as:

> [A]ny person convicted between January 23, 2005, and December 19, 2012, of any offense set forth in section 9799.13(3.1) (relating to applicability) determined by a court to be a sexually violent predator due to a mental abnormality or personality disorder that made the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S. § 9799.12. Hays testified that when determining whether an individual has a personality disorder, he looks at "the total history of the individual." N.T. SVP Hearing, 3/2/12, at 9. Hays then stated that he

considered Dapra's extensive criminal history and his "blatant disregard for the well-being of others" to determine that Dapra has antisocial personality disorder. *Id.* at 10, 15, 19. Dapra claims that Hays' statement that Dapra "took what he wanted" referred to the taking of money from M.C., for which he was acquitted. However, the record shows that Hays is referring to Dapra raping M.C., essentially "taking" her without her consent, for which Dapra was convicted, and which led Hays to conclude that "the likelihood of him raping another woman due to the antisocial personality disorder. . . is likely." *Id.* at 21. Accordingly, Dapra's claim that trial counsel erred by not challenging Dapra's SVP status is without merit.

Dapra's final claim relates to ineffective assistance of counsel during a hearing on his post-sentence motions in which he asserted a right to a new trial based on after-discovered evidence. At the hearing, Dapra's friend, Joseph Talarico, testified that he spoke to M.C. in a bar the day of the Super Bowl in February 2010, and that M.C. told him that Dapra never raped her. N.T. Post-Sentence Motions Hearing, 6/18/12, at 7-8. Following Talarico's testimony, the Commonwealth called Detective Robert Weaver who testified that on December 8, 2011, Talarico told him about his conversation with M.C. at the bar. *Id.* at 26-27. Detective Weaver further testified to a conversation he had with Dapra's sister in which she stated that Dapra's counsel was aware of Talarico's statement before trial. Detective Weaver also testified to a conversation with M.C., in which she told him that she never told Talarico that Dapra did not rape her. *Id.* at 28-29.

- 10 -

At the conclusion of the hearing, the court denied Dapra's post-sentence motion, having determined that Talarico was not credible, and that even if he had been credible, his testimony would not have entitled Dapra to relief as after-discovered evidence. *Id.* at 33.

Dapra argues that trial counsel was ineffective for failing to object to Detective Weaver's hearsay testimony at the post-sentence motion hearing. Upon review of the post-sentence motion hearing transcript and the trial court's Pa.R.A.P. 1925(a) opinion filed on October 16, 2012, it is clear that the court denied relief based solely on its conclusion that Talarico was untruthful. Accordingly, even if trial counsel had objected to the hearsay testimony of Detective Weaver, Dapra cannot establish that, but for counsel's inaction, the outcome would have been different. *See Watkins*, *supra*.

After careful review of the certified record, as well as the briefs of the parties and applicable law, we agree with the PCRA court that Dapra is not entitled to relief.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2015

- 11 -