J. S52004/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| OSCAR ALVARADO, | : | No. 963 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, March 13, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0001284-2009

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED AUGUST 18, 2016**

Oscar Alvarado appeals, ***pro se***, from the order entered in the Court of Common Pleas of Philadelphia County that dismissed his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA").  We affirm.

The PCRA court set forth the following factual history:

> At approximately 4:20 p.m. on October 21, 2008, Marta Martinez (decedent) was fatally shot by [appellant] at Fairhill Square Park, located at the intersection of Lawrence Street and Lehigh Avenue in Philadelphia.
>
> At approximately 3:00 p.m. that same day, [appellant] and his cousin, co-defendant Cynthia Alvarado (Cynthia), had purchased Xanax pills from a person in Fairhill Park, which was well-known for the illegal sale of prescription medication pills.[Footnote 9]  While [appellant] purchased the pills in the park, Cynthia waited across the street in

---

* Retired Senior Judge assigned to the Superior Court.

her car, a red Honda Civic. While waiting, Cynthia encountered a childhood friend, Maiced Beltran.[Footnote 10] Cynthia offered Ms. Beltran a ride, which she accepted. When [appellant] returned from purchasing the drugs, each person ingested multiple Xanax pills.

[Footnote 9] The identity of this person is unknown.

[Footnote 10] Ms. Beltran testified for the Commonwealth to many of the facts contained herein.

The trio spent an hour travelling to various locations, with Cynthia driving, [appellant] sitting in the passenger seat, and Ms. Beltran and Cynthia's one-year old daughter sitting in the back seat. At some point during this hour, [appellant] pulled a gun out from underneath his seat and showed it to Ms. Beltran and Cynthia. At approximately 4:00 p.m., the trio returned to the park to purchase more Xanax pills. Cynthia parked the car near the intersection of 4th and Lawrence Streets. Upon arriving, Ms. Beltran suggested to [appellant] that he try to "get a play," meaning that he should try and get extra pills in addition to the amount for which he was paying. [Appellant] began to walk away from the car and into the park to make the purchase, but Cynthia called him back and stated, "Cuz, you know, you know what to do. You know, if they don't give you a play, just pull that shit out." Ms. Beltran understood this to mean that Cynthia was suggesting to [appellant] that he should use his gun to get the extra pills. Ms. Beltran got upset with Cynthia for making this statement and began to yell at her. [Appellant] then left the vehicle and walked into the park. The decedent, a homeless woman, was standing near the parked vehicle.

[Appellant] approached a male drug dealer in the park,[Footnote 11] pulled the gun out of his waistband, stuck it into the drug dealer's midsection, and took a bottle of Xanax pills that the drug dealer

was holding in his hand. [Appellant] then turned around and began walking back to the vehicle. The drug dealer began yelling, "He robbed me!" and the other people in the park, including the victim, joined in. Some people started following [appellant]. [Appellant] ran towards the car and got back into the passenger seat of the vehicle. The decedent approached the vehicle and attempted to look inside the driver's side window. [Appellant] reached across the driver's seat and shot the victim through the partially open driver's side window. [Appellant] then opened the passenger door, reached over the hood of the car, and fired two to three more shots into the park area.[Footnote 12] [Appellant] then told Cynthia to drive away, and she obliged, leaving the area of the park.

> [Footnote 11] The identity of the drug dealer is unknown.

> [Footnote 12] Eyewitness accounts differ as to how [appellant] shot the gun after the initial shot through the open window. One eyewitness, Edwin Schermety, stated that [appellant] did not reach over the hood but continued to shoot through the window. In her police statement, Cynthia stated that [appellant] walked to the back of the car and fired the shots from that location.

As the trio left the park, they ingested more Xanax pills from the bottle that [appellant] had just taken from the drug dealer. The group then drove to various locations, including Cynthia's father's house, where they traded the Honda Civic for her father's red Dodge pickup truck, and dropped off Cynthia's child. After leaving the house, the group also purchased a vial of the drug angel dust.[Footnote 13] The group then drove to Cynthia's apartment, located at 106 West Thompson Street, where they stayed until their arrest at approximately 8:00 p.m. that evening. The police, having received a license plate number for the red Honda Civic and descriptive

information of [appellant] and Cynthia, were able to eventually locate them both the same day. As the police arrived at Cynthia's residence to arrest them, [appellant] went to the apartment of Erica Martinez, a neighbor who lived in that same building, and banged on her apartment door. When Ms. Martinez opened the door, [appellant] stated, "I need to hide in your apartment." Ms. Martinez refused, and [appellant] was arrested at that time.

> [Footnote 13] Ms. Beltran testified that she smoked the angel dust, but did not see either [appellant] or Cynthia do so.

PCRA court opinion, 9/16/15 at 2-4 (citations to the notes of testimony omitted).

The PCRA court also set forth the following procedural history:

On July 15, 2010, following a jury trial[Footnote 1] before this Court, [appellant] was found guilty of murder of the second degree (H-2), robbery (F-1), and carrying a firearm without a license (F-3).[Footnote 2] That same day, after the jury returned its verdict, [appellant] pled guilty to the charge of persons not to possess firearms (F-2).[Footnote 3] Sentencing was deferred until August 3, 2010, at which time [appellant] was sentenced to the mandatory term[Footnote 4] of life in prison.[Footnote 5]

> [Footnote 1] At trial, [appellant] was represented by Marit Anderson, Esquire and Andrea Konow, Esquire of the Defender Association of Philadelphia.
>
> [Footnote 2] 18 Pa.C.S.[A.] §§ 2502(b), 3701(a)(1)(i), and 6106(a)(1), respectively. [Appellant] was found not guilty of criminal conspiracy, 18 Pa.C.S.[A.] § 903. [Appellant] was tried with a co-defendant, Cynthia Alvarado, who was also found

guilty of murder of the second degree (H-2) and robbery (F-1).

[Footnote 3] 18 Pa.C.S.[A.] § 6105(a)(1). On August 3, 2010, [appellant] consolidated three open cases and pled guilty to the following charges: escape (F-3) (CP-51-CR-0001865-2010), aggravated assault by a prisoner (F-3) (CP-51-CR-0005962-2010), and robbery (F-1), criminal conspiracy (F-1), and possessing instruments of crime (PIC) (F-1) (CP-51-CR-0004737-2009).

[Footnote 4] 18 Pa.C.S.[A.] § 1102(a).

[Footnote 5] The robbery charge merged with the charge of second degree murder for sentencing purposes. As to the charge of carrying a firearm without a license, [appellant] was sentenced to a concurrent term of not less than 3 ½ nor more than 7 years [of] imprisonment. As to the charge of persons not to possess firearms, to which [appellant] pleaded guilty, [appellant] was sentenced to a concurrent term of not less than five nor more than ten years [of] imprisonment. As to the charge of robbery, for which [appellant] had pled guilty, [appellant] was sentenced to a consecutive term of not less than 8 nor more than 20 years [of] imprisonment. As to the charge of criminal conspiracy, to which [appellant] pled guilty, [appellant] was sentenced to a concurrent term of not less than 7 nor more than 20 years [of] imprisonment. As to the charge of PIC, to which [appellant] pled guilty, [appellant] was sentenced to a concurrent term of not less than 1 nor more than five years [of] imprisonment. As to the charge of

escape, to which [appellant] pled guilty, [appellant] was sentenced to a concurrent term of not less than 2 ½ nor more than five years [of] imprisonment. As to the charge of aggravated harassment by prisoner, to which [appellant] pled guilty, [appellant] was sentenced to a concurrent term of not less than 2 ½ nor more than five years [of] imprisonment.

Petitioner filed a timely notice of appeal on August 16, 2010. On March 20, 2012, the Superior Court affirmed [appellant's] judgment of sentence, and on January 30, 2013, our Supreme Court denied [appellant's] petition for allowance of appeal.[Footnote 6]

> [Footnote 6] ***Commonwealth v. Alvarado***, No. 2366 EDA 2010, slip op. (Pa.Super., March 20, 2012) (memorandum opinion), ***allocatur denied*** 185 EAL 2012 (Pa., Jan. 30, 2013).

On February 28, 2013, [appellant] filed a timely ***pro se*** PCRA petition. Counsel was appointed[Footnote 7] and, on October 11, 2014, filed a ***Finley*** "no merit" letter and motion to withdraw as counsel.[Footnote 8] On February 5, 2015, having reviewed the pleadings and conducted an independent review, this Court sent [appellant] notice of its intent to dismiss his claims without a hearing pursuant to Pa.R.Crim.P. 907 (907 Notice). Consistent with the 907 Notice, [appellant's] PCRA petition was dismissed on March 13, 2015. This timely appeal followed.

> [Footnote 7] Janis Smarro, Esquire, was appointed to represent [appellant] on collateral attack.

> [Footnote 8] ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988).

- 6 -

*Id.* at 1-2.

Appellant raises the following issues for our review:

1. Whether the PCRA court erred by dismissing [appellant's] PCRA petition alleging ineffective assistance of counsel and [c]onfrontation right violations, where [appellant's] [c]onfrontation rights were violated when having denied a motion to sever co-defendant Cynthia Alvarado's trial from [appellant's] trial, the trial court admitted the statements that non-testifying co-defendant Cynthia Alvarado had given to police and the prosecutor's opening statements undid the redaction. [Appellant's] 6th Amendment right to effective assistance of counsel was violated, where trial counsel failed to object to the [c]onfrontation violations. [Appellant's] rule-based and Article I, Sec. 9 rights to effective assistance of counsel were violated, where PCRA counsel filed a no-merit letter despite existence of these meritful [sic] claims.

2. Whether the PCRA court erred by dismissing [appellant's] PCRA petition alleging ineffective assistance of counsel based on counsel's failure to interview Marvin Kennedy and eyewitness Mark Vandegrift (who witnessed the incident, and identified [and] spoke to the "robbery victim" drug dealer "Albert"), and for failing to subsequently call them to testify at trial.

Appellant's brief at 4.

We limit our review of a PCRA court's decision to examining whether the record supports the PCRA court's findings of fact and whether its conclusions of law are free from legal error. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citations omitted). We view the PCRA court's

findings and the evidence of record in a light most favorable to the prevailing party. ***Id.***

To be entitled to PCRA relief, the defendant bears the burden of establishing, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S.A. § 9543(a)(2), which include ineffectiveness of counsel that "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i) and (ii); ***see also Mason***, 130 A.3d at 618 (citations omitted).

Here, appellant's claims assert that his trial and PCRA counsel provided ineffective assistance.

> Counsel is presumed effective, and in order to overcome that presumption a PCRA petitioner must plead and prove that: (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner. With regard to reasonable basis, the PCRA court 'does not question whether there were other more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any reasonable basis. Where matters of strategy and tactics are concerned, [a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different. Failure

> to establish any prong of the [] test will defeat an ineffectiveness claim.

***Mason***, 130 A.3d at 618 (internal quotation marks and citations omitted).

Appellant first contends that PCRA counsel was ineffective in failing to challenge the effectiveness of trial counsel because trial counsel, Attorneys Marit Anderson and Andrea Konow, (1) failed to move to sever appellant's trial from that of his co-defendant, Cynthia Alvarado; (2) failed to object when the Commonwealth read Ms. Alvarado's redacted statement to the jury because the redaction failed to comply with ***Bruton v. United States***, 391 U.S. 123 (1968); and (3) failed to object to the Commonwealth's opening statement because it referred to appellant by either his name or "defendant" 28 times and this somehow negated the redaction in violation of ***Bruton***.

Our review of the record reveals that on February 5, 2015, the PCRA court filed its notice of intent to dismiss appellant's PCRA petition pursuant to Pa.R.Crim.P. 907 (Rule 907 Notice). Appellant then filed a timely response to the PCRA court's Rule 907 Notice. In that response, however, appellant did not allege ineffective assistance of PCRA counsel. Consequently, appellant's failure to raise his claims of ineffectiveness of PCRA counsel in his response to the Rule 907 Notice results in waiver of those claims on appeal. ***See Commonwealth v. Ford***, 44 A.3d 1190, 1198

(Pa.Super. 2012) (finding that "when counsel files a **Turner/Finley**[1] no-merit letter to the PCRA court, a petitioner must allege any claims of ineffectiveness of PCRA counsel in a response to the court's notice of intent to dismiss."); **see also Commonwealth v. Pitts**, 981 A.2d 875, 880 n.4 (Pa. 2009).

With respect to appellant's underlying claims on his first issue on appeal, appellant first alleges that trial counsel were ineffective for failing to move to sever appellant's trial from that of his co-defendant, Cynthia Alvarado. Appellant then further alleges ineffectiveness for trial counsel's failure to object to two **Bruton** violations.

With respect to the motion to sever, the record belies appellant's contention that trial counsel failed to move for severance. The record reflects that trial counsel filed a motion to sever on August 18, 2009. The record further reflects that Attorney Anderson again objected to a joint trial at a pre-trial hearing when she stated, "We continue our vociferous objection to the cases being tried together." (Notes of testimony, 7/21/10 at 77.) Additionally, defense counsel renewed the motion immediately prior to jury selection, and the trial court denied the motion. (Notes of testimony, 7/8/10 at 131-132, 144.) Therefore, this claim lacks arguable merit.

---

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (**en banc**).

With respect to appellant's underlying claim of trial counsel's ineffectiveness for failing to object to appellant's claimed ***Bruton*** violations, the record reflects that although appellant included this claim in his Pa.R.A.P. 1925(b) statement, he failed to preserve this issue in his PCRA petition and did not raise it in his response to the PCRA court's Rule 907 Notice. Therefore, appellant waives this issue on appeal. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). ***See also Commonwealth v. Smith***, 121 A.3d 1049, 1055 (Pa.Super. 2015) (recognizing that a PCRA petitioner is unable to raise his claims for the first time in his Rule 1925(b) statement).

Appellant finally claims that trial counsel were ineffective for failing to interview Marvin Kennedy and Mark Vandegrift and for failing to call them as defense witnesses.

When the trial court conducts a colloquy with the defendant that demonstrates that the defendant knowingly, voluntarily, and intelligently decided against calling defense witnesses, a subsequent claim that counsel was ineffective for failing to call such witnesses lacks arguable merit. ***See Commonwealth v. Pander***, 100 A.3d 626, 642-643 (Pa.Super. 2014); ***see also Commonwealth v. Rios***, 920 A.2d 790, 802-803 (Pa. 2007) (concluding that a claim of ineffective assistance of counsel in failing to call alibi witnesses lacked arguable merit where the trial court conducted a

colloquy of defendant regarding whether he agreed with the decision not to call witnesses); *Commonwealth v. Paddy*, 800 A.2d 294, 316 (Pa. 2002) (finding that because defendant "expressed the view that the decision not to call alibi witnesses was his as well as trial counsel's, and his decision has not been shown to have been unknowingly, involuntarily, or unintelligently made, this allegation of ineffectiveness lacks merit.").

Here, the following colloquy took place:

> THE COURT: . . . . So have either of you taken any drugs, alcohol, or medication in the last 12 hours?
>
> . . . .
>
> [APPELLANT]: No.
>
> . . . .
>
> THE COURT: . . . . Do you each read, write, and understand the English language?
>
> . . . .
>
> [APPELLANT]: Yes.
>
> THE COURT: Have you ever been diagnosed with a mental illness?
>
> . . . .
>
> [APPELLANT]: No.
>
> . . . .
>
> THE COURT: . . . . Now, were there any witnesses that either of you wanted to call or anything that you discussed with your attorney that is not going to happen? Because we're about to finish this afternoon and so if there's nobody coming to testify

and you thought there was, this is the moment to tell me.

. . . .

[APPELLANT]: Nobody.

. . . .

THE COURT: And do you each understand that you are bound by -- which means stuck with -- the answers that you're giving me here under oath in open court?

. . . .

[APPELLANT]: Yes.

THE COURT: So you can't come back later and say, well, I really did have witnesses, but I answered this way because my lawyer said if we delayed anything, you'd get mad.

Believe it or not, people actually say these things after the fact.

If you have anything to say, this is the moment to say it and you can't later blame your lawyer for telling you. You're under oath, and this is when you're answering me.

Do you understand that?

. . . .

[APPELLANT]: Yeah, I understand.

Notes of testimony, 7/13/10 at 159-165.

Based on this colloquy, appellant's claim that trial counsel were ineffective for failing to interview and call Mr. Kennedy and Mr. Vandegrift lacks arguable merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2016